JESÚS DE LEÓN ROSA y su esposa MARÍA DE LEÓN CASANOVA, demandantes y apelantes, *v.* EULOGIA COLÓN ALVAREZ, demandada y apelada.

No. 5050.—*Sometido:* Abril 1, 1930. *Resuelto:* Marzo 20, 1931.

*Ulpiano Crespo, Jr.,* abogado de los apelantes; *R. Agrait Aldea,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

La demanda a virtud de la cual se inició este pleito se titula sobre ''reivindicación'' y se radicó en la Corte de Distrito de Arecibo en agosto, 1928. Se basa en los siguientes hechos:

''Segundo: Que los demandantes son dueños de la siguiente finca: (Se describe una finca de ciento catorce cuerdas, situada en el barrio de Islote, de Arecibo).

''Tercero: Que los demandantes Jesús de León Rosa y su esposa María de León Casanova, y la demandada Eulogia Colón Alvarez, en unión de Don Tomás Boneta Bolet, marido de esta última, otorgaron una escritura de cancelación total de hipoteca y compraventa con pacto de retracto el día 30 de octubre de 1911, ante el

Notario Manuel Paz Urdaz, la cual fué inscrita, en cuanto a la venta de retracto al folio. . .

"Cuarto: Que en dicha escritura, se hizo constar como condiciones del contrato, las siguientes:

"1. 'Que el señor de León Rosa, podrá recuperar la finca vendida, si en el término de cuatro años, contados desde la fecha de la escritura, que vencía el día treinta de octubre de mil novecientos quince, devolviese a la señora Eulogia Colón Alvarez los $3100, precio de la enajenación, y los gastos necesarios y útiles hechos en la finca; pero que si vencido el término estipulado, el señor Jesús de León no hubiera cumplido esta condición, quedará irrevocablemente consumada la citada compraventa, sin más requisitos que el hacerlo constar en el Registro de la Propiedad.

"2. 'Y que durante el término fijado para el aludido pacto el señor Jesús de León Rosa, quedaría usufructuando la finca en concepto de arrendamiento por un canon de $31.00 mensuales, pagaderos por mensualidades vencidas, contando desde la fecha; y bien entendido que vencidas tres mensualidades del denominado canon sin ser satisfechas, quedaría rescindido este arrendamiento y consumada en absoluto la venta, requisito que así mismo se haría contar en el Registro.'

"Quinto: Que a pesar del contrato referido, los demandantes continuaron como antes de haberlo otorgado, actuando como los verdaderos dueños de la finca, cultivándola y percibiendo sus frutos, rentas y productos, pagando las contribuciones al Tesorero Insular, y ejerciendo los demás actos de dominio como siempre.

"Sexto: Que los demandantes pagaron puntualmente los cánones de arrendamiento estipulados en dicha escritura, a Don Tomás Boneta Bolet, marido de la demandada Eulogia Colón, quien administraba los bienes privativos de ella.

"Y al efecto alegan los demandantes, que el día 27 de julio de 1912, pagaron a dicho Tomás Boneta Bolet, $62.00 correspondientes a los cánones de arrendamiento de los meses de junio y julio de 1912, firmando al efecto un recibo que copiado literalmente dice así:

" 'Pagó Don Jesús de León $62, mcte. a cuenta de arrendamiento devengados de la finca que ocupa en el barrio Islote, de esta jurisdicción. Arecibo, julio 27, 1912. Firmado: T. Boneta.—(Son $62. mcte.)'

"Y en 30 de octubre del mismo año le pagaron al mismo, $93.00 correspondientes a los cánones de agosto, septiembre y octubre de mil novecientos doce.

"Séptimo: Que el día 29 de noviembre de 1912, *seis días des-*

*pués de muerto Tomás Boneta Bolet,* y tres años antes de vencerse el mencionado contrato, fijado para el 30 de octubre de 1915, la demandada Eulogia Colón Alvarez, maliciosa y fraudulentamente solicitó y obtuvo en el Registro de la Propiedad de Arecibo, la consumación de la venta con pacto de retro referida, fundándose para ello solamente en que el demandante Jesús de León debía más de tres mensualidades del denominado canon de arrendamiento, cuya consumación de venta se hizo constar por nota al margen de la inscripción quinta. . .

"Octavo: QUE AL SER ASÍ SORPRENDIDO el demandante de León compareció a la casa habitación de Eulogia Colón Alvarez acompañado del Abogado Cayetano Coll y Cuchí, y le ofreció allí y entonces, pagarle en el acto la suma de $3100.00 de que aparecía ella acreedora por la escritura de 30 de octubre de 1911, a que se ha hecho referencia, más los gastos del contrato y cualquier otro pago legítimo hecho para la venta y demás gastos en que hubiere incurrido, cuya suma se negó ella a recibir, alegando ¡que ya la finca era de su propiedad exclusiva; y reiteran ahora los demandantes su ofrecimiento de cumplir estrictamente su obligación.

"Noveno: Que UTILIZANDO ILEGALMENTE la mencionada escritura de treinta de octubre de 1911, habiendo ya obtenido fraudulenta y dolosamente el día 29 de noviembre de 1912, la consumación de la venta en el Registro, según se alega en el hecho séptimo, la demandada Eulogia Colón Alvarez compareció ante la Corte Municipal del Distrito Judicial Municipal de Arecibo, y presentó una demanda de desahucio el día 4 de febrero de 1914, contra Jesús de León Rosa y su esposa María de León Casanova, como si éstos fueran arrendatarios que hubieran faltado al pago de cánones de arrendamiento de la referida propiedad, habiendo obtenido una sentencia a su favor y en su consecuencia el día 6 de agosto de 1914, obtuvo dicha Eulogia Colón Alvarez el lanzamiento de los demandantes de la referida finca, entrando de esa manera en la posesión fraudulenta de la misma.

"Décimo: Que la demandada Eulogia Colón, se encuentra en posesión de la finca descrita en el hecho quinto de la demanda, desde el 6 de agosto de 1914, cuyo valor en la tasación oficial del Gobierno es de diez y siete mil cuatrocientos veinte dollars, y ha estado y está disfrutándola ilegalmente, percibiendo sus frutos, rentas y productos hasta la fecha.

"En mérito de los hechos expuestos, los demandantes SUPLICAN a la corte, se sirva dictar una sentencia en contra de la demandada que contenga los siguientes pronunciamientos:

"1. Que se declare que la finca descrita en la demanda es de la exclusiva propiedad de los demandantes, y que deben ser restituídos en la tranquila posesión, tenencia y disfrute de la misma; ordenando que se cancele en el Registro de la Propiedad la inscripción de ella a favor de la demandada.

"2. Que se conceda cualquier otro remedio a las partes que sea consistente con las alegaciones de la demanda."

La demandada en su contestación admite el otorgamiento de la escritura de venta con pacto de retro y sostiene que de acuerdo con sus términos habiendo dejado de pagar los demandantes más de tres mensualidades de los arrendamientos, hizo constar la nota de consumación del contrato en el registro, y convertida en dueña, no queriendo los demandantes entregarle la posesión voluntariamente, los desalojó por medio de una acción de desahucio desde el año 1914. Como defensas especiales alegó: 1º., la cosa juzgada, por haber quedado resuelta la cuestión que ahora se suscita en el pleito número 5117 iniciado por los mismos demandantes contra la demandada; 2º., la prescripción, basada en el artículo 1268 del Código Civil Revisado, y 3º., la de encontrarse los demandantes impedidos de reclamar por haber cedido su derecho de retracto a la Plazuela Sugar Co. Parece conveniente decir con respecto a la tercera defensa que a fin de que esta opinión no resulte demasiado larga, prescindiremos de ella, ya que no es necesario entrar en la consideración de sus méritos para la resolución del recurso.

Los demandantes formularon una réplica a la materia nueva contenida en la contestación. En ella niegan la existencia de la cosa juzgada, en parte, así:

"Que ese pleito era por nulidad de escrituras, en el cual se alegaba el fraude y simulación al otorgarse la escritura de venta con pacto de retro de 23 de septiembre de 1909, ante el Notario Paz Urdaz, en cuyo acto intervinieron Tomás Boneta Bolet y su señora Eulogia Colón Alvarez; y en el cual también se pedía contra Plazuela Sugar Co. que se anulara la escritura de cesión otorgada en 18 de junio de 1912 ante Cayetano Coll y Cuchí; y al comparecer Eulogia Colón Alvarez, opuso a la demanda la excepción de 'no

aducir hechos suficientes que determinen una causa de acción', la cual el Hon. Juez de esta corte declaró con lugar el día 9 de diciembre de 1919, dictándose el 21 de enero de 1920 la correspondiente sentencia, de la cual apelaron los demandantes, habiendo sido desestimada la apelación el 28 de enero de 1921.

"Que dicho pleito de nulidad de escrituras se basaba en una causa distinta a la que en éste se establece, siendo las partes distintas en su mayor número y el remedio que se solicitaba en él, según se desprende por la súplica, era completamente distinto al que se alega y pide en la demanda en este caso.

"Que entre el referido pleito y el presente no existe la identidad de personas, ni de la cosa, ni de la acción, no siendo de aplicación la defensa de cosa juzgada, puesto que el objeto de ambas acciones y fundamentos de derecho en ambos son diametralmente opuestos.''

Se oponen a la defensa de prescripción, como sigue:

"Que los demandantes cumplieron fielmente los pactos y condiciones a que estaban obligados según la escritura de 30 de octubre de 1911 ante el Notario Manuel Paz Urdaz, pagando puntualmente los cánones de arrendamiento a la demandada, y a pesar de ello dicha demandada, amparándose en la cláusula resolutoria transcrita en el hecho cuarto de la demanda enmendada, burló y defraudó a los demandantes en sus bienes y derechos, en virtud de la consumación de la venta que se efectuó en el Registro de la Propiedad de Arecibo el día 29 de noviembre de 1912, como se alega en los hechos tercero, cuarto, quinto, sexto y séptimo de la demanda enmendada.

"*En consecuencia, los demandantes no tienen interés en pedir, ni piden la nulidad de la escritura de venta con pacto de retro, ni de ninguna otra escritura, sino que confían en el cumplimiento específico de los pactos contenidos en la escritura mencionada de 30 de octubre de 1911 ante el Notario Paz Urdaz.*'' (Bastardillas nuestras.)

Fué el pleito a juicio, practicando prueba ambas partes, y la corte lo falló finalmente declarando la demanda sin lugar, con imposición de costas a los demandantes. Según la relación del caso y opinión que acompaña a la sentencia, ésta se funda en haber estimado la corte que concurrían en favor de

la demandada las defensas de prescripción y de cosa juzgada, motivo por el cual creyó innecesario considerar las otras cuestiones suscitadas.

No conformes los demandantes interpusieron este recurso de apelación, señalando en su alegato la comisión de doce errores.

■ A nuestro juicio existe la cosa juzgada. El pleito número 5117 se inició en la Corte de Distrito de Arecibo por los mismos demandantes contra la propia demandada, incluyéndose además como demandados la Sucesión de Tomás Boneta y la Plazuela Sugar Co.; se tituló sobre "reivindicación y nulidad de escrituras;" se alegó en él que la escritura de venta con pacto de retro no era una venta, sino una hipoteca, y se pidió que se dictara sentencia:

"1º Declarando nula y sin ningún valor ni efecto la escritura de 30 de octubre de 1911 ante el Notario Paz Urdaz, mandando que se cancele su inscripción e inscripciones hechas en el Registro de la Propiedad.

"2º Declarando nula y de ningún valor la escritura de 18 de julio de 1912 ante el Notario Cayetano Coll y Cuchí, mandando a cancelar su inscripción en el Registro de la Propiedad.

"3º Que se declare que el título de propiedad de la descrita finca permaneció en los demandantes, no obstante las escrituras a que se ha hecho mención, restituyendo a los demandantes en la tranquila posesión, tenencia, y disfrute de la misma."

A esa demanda adujo excepciones previas la demandada Eulogia Colón Alvarez, demandada también en este pleito, y la corte las declaró con lugar pronunciando luego, el 21 de enero de 1920, una sentencia que dice:

"En el presente caso, esta corte, resolviendo las excepciones previas, de indebida acumulación de acciones; falta de hechos suficientes para determinar una causa de acción; y prescripción de la acción ejercitada, presentadas por la demandada Eulogia Colón, dictó en 9 de diciembre de 1919, una resolución, por los fundamentos de la cual se decide sostener las excepciones propuestas por la demandada Eulogia Colón, con las costas a los demandantes.

"Y habiéndose presentado en 10 de enero de 1920, por la de-

mandada Eulogia Colón, moción solicitando se pronuncie sentencia definitiva, la corte emitió su opinión en este caso, con fecha de hoy, por los fundamentos de la cual: FALLA—Que debe declarar como declara sin lugar la demanda, con las costas a cargo de la parte demandante.''

Los demandantes apelaron para ante esta Corte Suprema, pero su apelación fué desestimada por resolución de 28 de enero de 1921, por no haberse elevado la transcripción de los autos.

Basta examinar lo expuesto a la luz del artículo 1219 del Código Civil y de la jurisprudencia sentada entre otros en el caso de Ninlliat v. Suriñach, et al., 27 D.P.R. 78, para concluir que entre el caso resuelto por la sentencia firme de 21 de enero de 1920 y éste, concurre la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.

El hecho de que hubiera además otros demandados en el pleito número 5117, no importa. La demandada principal lo era allí y lo es aquí Eulogia Colón Alvarez, la vendedora en la escritura de venta con pacto de retro. La cosa única que se trata de reivindicar es la misma: la finca de ciento catorce cuerdas situada en el barrio Islote de Arecibo. Las causas, aunque se les llama de distinto modo, idénticas son en su raíz. Las partes las mismas, litigando en igual calidad.

Si alguna verdadera oportunidad tuvieron los demandantes de reivindicar la finca de que se trata, lo fué en el pleito número 5117. Allí ejercitaron, quizá, la verdadera causa de acción que procedía ejercitar y de haber proseguido su apelación, tal vez hubieran obtenido una sentencia favorable. No pueden quejarse. Tuvieron su día en corte, su oportunidad, y no los supieron aprovechar hasta el fin.

Pero aceptando, sin resolverlo, que no existiera una verdadera identidad de causas entre el pleito número 5117 y éste, partiendo de la base establecida por los demandantes en su réplica, esto es que ''los demandantes no tienen interés en pedir, ni piden la nulidad de la escritura de venta con

pacto de retro, ni de ninguna otra escritura, sino que confían en el cumplimiento específico de los pactos contenidos en la escritura mencionada de 30 de octubre de 1911 ante el notario Paz Urdaz;'' tendríamos siempre que decidir que procede la confirmación de la sentencia, porque la prueba aportada por los demandantes no es suficiente para demostrar que pagaron los cánones del arrendamiento correspondiente a los meses de agosto, septiembre y octubre de 1912.

Conocemos el recibo transcrito en la demanda. Por sus términos no dice que corresponde a los cánones de junio y julio de 1912. Pero aceptando que lo dijera, lo importante, lo imprescindible para sostener el hecho séptimo de la demanda y con él todo este último esfuerzo de los demandantes, era probar el pago de los cánones correspondientes a agosto, septiembre y octubre. ¿Y qué evidencia aportaron? Testimonio oral únicamente, así:

El demandante Jesús de León Rosa declaró:

"¿A qué meses corresponden esos sesenta y dos pesos?

"A junio y julio.

"¿Después de eso, cómo le pagó a Don Tomás Boneta las demás rentas?—El estuvo un día en casa y yo había recibido un dinero y él se hizo cargo de él.

"¿Qué día fué?—El día 30 de septiembre.

"¿Que dinero le entregó ese día a Boneta?—Ese día le entregué ochocientos cincuenta pesos.

"¿En qué año fué?—En 1912.

"¿En qué forma le entregó ese dinero?—En billetes todo.

"Para qué fué el dinero ese?—Para tres mensualidades que le debía a él y el resto para abonarle a los tres mil cien pesos de capital.

"Explique a la corte cómo ocurrió esa entrega y qué pasó allí.—Le entregué ese dinero, y en eso se buscó y no tenía cartera ni nada y yo en casa no acostumbraba a tener tinta ni papel, porque no lo usaba nunca, y se buscó papel y tinta y no se encontró.

"¿En ese momento no le dió recibo él?—Entonces como no se encontró tinta. Lo esencial era la tinta que no se encontró, y me dijo: te pasas por Arecibo, que te entregaré allá el recibo; y yo estaba acostumbrado por él, que después que me decía cualquier cosa él

era una escritura lo que me decía, y no me precisé por venir, y cuando vine a la semana o dos semanas a buscar el recibo ya estaba él grave.''

Y luego, contestando a la defensa, dijo:

''Dª Eulogia Colón le reconoció ese dinero después de muerto Don Tomás Boneta?—No, señor.

''Que pasó con Dª Eulogia Colón y el Dr. Boneta cuando le hizo saber de ese dinero?—Ellos no sabían de ese dinero. Ese dinero lo recibió Don Tomás Boneta sin nadie saberlo. Ese dinero lo recibió Don Tomás Boneta en casa. Apareció ese día en un quitrín que lo arrastraba un caballo bayo, y nos fuimos a voltear la finca y a ver el ganado, y cuando andábamos por allá me dijo: ¿no tiene dinero ninguno realizado? y le dije: sí, tengo un piquito en casa, y si le conviene llevárselo se lo puede llevar para arreglar los intereses. Y dijo: está bien. Y, anduvimos por allá y volvimos a casa y dijo: antes de irme de aquí quiero almorzar, y mandé a preparar un almuerzo y almorzamos, y después se presentó un gran aguacero, y me dijo: dame el dinero que tienes, que me lo voy a llevar; y dije: se lleva el dinero ese, pero me cubre los intereses que le debo y el resto para que me lo abone, y dijo: sí hombre, como no; y contamos el dinero, y cuando fué a darme el recibo fué a buscar la cartera y dijo: no traje la cartera, qué desgracia; y me pidió tinta y dije: nosotros no tenemos tinta ninguna, y me dijo entonces: pasa al pueblo para que se traiga el recibo inmediatamente, y me dejé estar en eso dos o tres semanas y cuando vine lo encontré en artículo de muerte y ya no se podía hablar con él.''

La demandante María de León Casanova, depuso:

''¿Qué hizo don Tomás Boneta mientras estuvo en su casa ese día?—Estuvo allí y almorzó y después se le entregó un dinero que se le iba a entregar.

''¿Cuánto dinero iban a entregar o entregaron?—Ochocientos cincuenta pesos.

''¿Quién lo tenía guardado?—Yo en el baúl.

''¿De qué procedía el dinero ese?—De rollos de tabaco y en rama y de reses que se vendían.

''¿Cuando entregaron ese dinero a Tomás Boneta qué se convino? —Que Jesús viniera a buscar el recibo acá a los pocos días.

''¿Por qué no dió el recibo en el acto?—Porque no había pluma ni tinta en casa.

"¿Don Tomás Boneta no tenía encima?—No, señor.

"¿Para qué se entregó el dinero?—Para pagar mensualidades de tres meses y el resto abonarlo al capital.

"¿Puede decir qué mensualidades fueron las que pagó?—Agosto, septiembre y octubre."

La cocinera de la casa, Fernanda Fernández, el cuidador del ganado de la finca, Juan Vélez, y Eugenio Natal que estaba de visita en la casa, corroboran lo declarado por los demandantes.

Cuando tocó a la demandada presentar su prueba, introdujo el testimonio de Luis C. Boneta, hijo mayor de ella y de Tomás Boneta, que declaró, en lo pertinente a la cuestión que investigamos, así:

"¿Para 1914 y antes, hasta 1911, Ud. se entendía en los asuntos de Eulogia Colón Alvarez?—Me entendía, papá y yo.

"¿Sabe para qué fecha murió Don Tomás Boneta?—En noviembre 22 del 1912.

"¿Después de ese fallecimiento tuvo que hablar algo con Jesús de León Rosa sobre el cumplimiento de algún contrato hecho por su mamá con él?—Hablé con él.

"Explique.—Jesús de León para fines de noviembre debía los cánones de arrendamiento de la finca que se le tenía arrendada, y para esa fecha debía cinco o seis meses, y cuando anoté la consumación de la venta en el Registro de la Propiedad me dijo que no tenía interés en la finca, porque se iba con su hermano para Hatillo, y que había vendido el derecho de retracto a Plazuela Sugar Company.

"Este recibo de arrendamientos. ¿Conoce la firma de su papá? —Sí, señor.

"¿Ese recibo de arrendamiento a qué se refiere?—Este recibo es un abono de mensualidades vencidas y no satisfechas. Cuando se hizo esto en julio 27 de 1912 debía cinco o seis meses y este recibo incluye hasta mayo o junio, y quedó siempre un mes o dos pendientes.

"¿Después de ese recibo él pagó algún otro mes?—Absolutamente ninguno. Pasó quince días antes de morir papá y me dijo que había que inscribir la consumación misma."

¿Cómo es posible pretender con tal prueba, contradicha

en la forma en que lo fué, demostrar un hecho de tanta trascendencia, de tan vital importancia, que es, bien puede decirse, la base única en que descansa este nuevo pleito?

No se trataba de relaciones en las cuales la costumbre era que no mediaran documentos. Cuando los demandantes pagaban, se les otorgaba un recibo. El propio demandante dice contestando a su abogado que dada la confianza que tenía en el señor Boneta no se "precisó" por ir a buscar el recibo y cuando fué "a la semana o dos semanas" a buscarlo, ya Boneta estaba grave, y luego contestando a preguntas del abogado de la demandada expuso que Boneta "dijo: no traje la cartera, qué desgracia; y me pidió tinta y dije: nosotros no tenemos tinta ninguna, y me dijo entonces: pasa al pueblo para que se traiga el recibo inmediatamente, y me dejé estar en eso dos o tres semanas y cuando vine lo encontré en artículo de muerte y ya no se podía hablar con él."

Si el hecho ocurrió, fué en verdad una desgracia para los demandantes que perdieran tanto tiempo en ir a buscar la prueba escrita que les hubiera permitido hacer valer su derecho ante los tribunales.

Además si se parte de la base del cumplimiento específico del contrato, ¿dónde y cuándo se cumplió la condición impuesta para retraer la propiedad, reintegrando a su debido tiempo al comprador el precio que pagara por la finca?

Los ofrecimientos a que se refiere la demanda y de que hablan luego las pruebas, fueron manifiestamente inadecuados. Si la demandada se negó a recibir el precio, los demandantes debieron consignarlo, y adoptar las otras medidas necesarias para colocarse dentro de la ley.

Bajo cualquier aspecto, pues, que el caso se considere, la sentencia debe ser la misma. Se comprende la actitud de los demandantes. Parece que perdieron una finca por virtud de una deuda que tal vez no alcanzaba a la tercera parte de su valor, pero no basta tener derecho, si es que lo tenían; es necesario saber ejercitarlo. Existen normas que aplicadas

quizá en alguna ocasión concreta no resulten enteramente justas, pero que la experiencia de los siglos demuestra que constituyen el mejor medio de garantizar la mayor suma de justicia que la imperfecta naturaleza humana puede aspirar a impartir. Además hay que saber perder y no recurrir a medios impropios, a pruebas tan dudosas que dejen en el ánimo del juzgador la impresión de que puedan ser enteramente fabricadas, para renovar litigios decididos con la plena intervención de las partes interesadas, y en los que la parte que se queja, como en este caso, perdió por sus propios actos su oportunidad de ir hasta el fin.

*Debe confirmarse la sentencia recurrida.*