VICTORIA y MANUELA BOLKER o WALKER, peticionarias, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. FEDERICO TILÉN, JUEZ, demandado; FRANCISCO y JOSÉ SOSA RODRÍGUEZ Y OTROS, interventores.

Número 2280.

*Reasignado*: 14 de abril de 1961.  *Resuelto*: 31 de mayo de 1961.

*B. Sánchez Castaño* y *R. Rivera Cervera*, abogados de las peticionarias; *Vicente Géigel Polanco*, abogado de los interventores.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Don Manuel Sosa Gil falleció en 23 de febrero de 1897 y le sucedieron como herederos testamentarios sus seis hijos legítimos José Encarnación, Valentina, Domingo, José, Leocadio y Pedro Sosa Cruz, y sus nietos Marcelina, Julio, Pedro

y Emilia Sosa y María Antonia, Domingo, Francisca, Concepción e Inés Araújo Sosa, en representación de dos hijos premuertos llamados Fernando y Emilia Sosa Cruz.

La presente demanda, sobre reivindicación de propiedad inmueble, nulidad de escrituras e indemnización de daños y perjuicios, se inició por varios nietos de don Manuel Sosa Gil, llamados Manuel, Eusebio, Georgina, Pedro, Francisca, Agripina, Amparo y Eladio Sosa Rodríguez, [1] Evangelista Sosa González, [2] María Antonia Sosa Pérez, [3] Luis Medero Sosa, [4] y Francisco y José Sosa Rodríguez. [5] Entre otras personas, se incluyeron como demandados, a Victoria Bolker o Walker y a su hija Manuela Bolker o Walker de Velázquez. [6]

La acción tiene como propósito principal la reivindicación de una finca denominada Estancia Canovanillas [7] que figura inscrita en el Registro de la Propiedad de Río Piedras a favor de la demandada Victoria Bolker, y para ello se alega sustancialmente lo siguiente: que en 24 de febrero de 1895, don Manuel Sosa Gil tomó a préstamo a don José Ignacio

---

[1] Hijos de Pedro Sosa Cruz.

[2] Hijo de don José Encarnación Sosa Cruz.

[3] Hija de Leocadio Sosa Cruz.

[4] Hijo de Valentina Sosa Cruz.

[5] Hijos de José Sosa Cruz.

[6] Como el auto de certiorari se expidió a petición de estas dos demandadas, no es necesario hacer referencia a las otras personas que se incluyeron como parte.

[7] Dicha finca se describe en la demanda, al igual que en la primera inscripción que de la misma figura en el Registro de la Propiedad, con una cabida de 171.50 cuerdas. De una certificación del Registrador de la Propiedad de Río Piedras, que figura unida a los autos, aparece que el Estado Libre Asociado expropió una parcela de 4.30008 cuerdas.

La finca se describe en la demanda como sigue:

"RUSTICA: estancia denominada 'Canovanillas' radicada en el barrio Canovanillas de la jurisdicción de Carolina, Puerto Rico, compuesta de 171.5 cuerdas, equivalentes a 66 hectáreas, 1 área y 16 centiáreas, con casa de madera, terrera, de 10 metros de frente por otros 10 metros de fondo, cubierta de zinc, colindando por el Norte, con el Río Grande de Loíza; por el Sur, con terrenos de la Sucesión de Francisco Barreto; por el Oeste, con terrenos de Josefa Cabrera y Lorenzo Bablat; y por el Este, con terrenos de Epifanio Vizcarrondo."

Arzuaga la suma de 2,000 pesos, y en garantía de dicha cantidad le traspasó a título de venta la referida finca; que posteriormente Sosa satisfizo a Arzuaga dicha suma, conviniéndose entre ambos que la venta quedaría sin efecto, y obligándose Arzuaga a otorgar la correspondiente escritura de traspaso a favor de Sosa; que a pesar de que Arzuaga reconoció esta obligación en la escritura de testamento abierto que otorgó en 24 de mayo de 1895 ante el Notario don Leandro Lara Tomé, don Pedro Arzuaga, como apoderado de don José Ignacio Arzuaga, y don Francisco Yereguí se confabularon para privar a los herederos de don Manuel Sosa Gil de la finca mencionada, y al efecto don Pedro Arzuaga, en la capacidad representativa aludida, compareció a vender a Yereguí la mencionada finca; que posteriormente Yereguí donó la finca a la demandada Victoria Bolker, cocinera de su casa, con quien había procreado varios hijos; que en esta última transacción se hizo figurar un precio de $10,000 que el vendedor confesó haber recibido con anterioridad al otorgamiento, y que en realidad esta transacción fue simulada ya que no medió precio alguno; que al fallecimiento de don Manuel Sosa Gil, su albacea don Francisco Yereguí practicó la división de los bienes relictos al fallecimiento de aquél omitiendo en el inventario la estancia Canovanillas, y expresó que no tenía otros bienes, a pesar de tener conocimiento, por razón de sus relaciones con Sosa y José Ignacio Arzuaga, del hecho de que Sosa era el dueño de dicha finca; que "según la mejor información y creencia de los demandantes", Yereguí hizo saber a la demandada Victoria Bolker la forma ilegal en que él había adquirido dicha finca y la previno de que los verdaderos dueños establecerían pleitos en reclamación del título, y le advirtió que jamás debía venderla; que en estas circunstancias dicha demandada nunca ha poseído la finca a que se refiere el litigio en concepto de dueña, "tanto por no haber pagado por ella suma alguna como por la advertencia que le hizo Yereguí al tiempo de pasarle la propiedad"; que

el traspaso hecho a favor de doña Victoria Bolker se verificó con el propósito de poder alegar que ésta era un tercero protegido por la ley y en esta forma obstaculizar las reclamaciones de los demandantes; y que "según la mejor información y creencia de los demandantes", la demandada Victoria Bolker ha reconocido expresamente durante todo el tiempo que ha poseído materialmente la propiedad, el derecho de sus verdaderos dueños, o sea, de los miembros de la Sucesión de don Manuel Sosa y Gil, y ha admitido igualmente que está impedida de enajenar dicha finca por estar viciado el título en su origen.

Las demandadas Victoria y Manuela Bolker solicitaron se dictara sentencia sumaria desestimando la demanda "ya que no existe una controversia genuina de hechos", por los siguientes fundamentos:

1. La acción reivindicatoria que se pretende ejercitar está prescrita a tenor de las disposiciones del artículo 1863 del Código Civil (31 L.P.R.A. sec. 5293) por haber transcurrido más de treinta (30) años desde que el causante de los demandantes se desprendió del título, posesión y dominio de la finca objeto de la acción.

2. La demandada Victoria Bolker ha adquirido la finca a que se refiere el pleito por prescripción adquisitiva extraordinaria.

3. La acción subsidiaria de daños y perjuicios que se ejercita está prescrita de acuerdo con las disposiciones del artículo 1864 del Código Civil (31 L.P.R.A. 5294).

4. Las demandantes están impedidas de proseguir la presente acción por existir cosa juzgada entre las partes en virtud de las sentencias dictadas por la extinta Corte de Distrito de San Juan en los casos civiles número 427, 1334 y 3337.

5. Dichas demandadas son terceros hipotecarios protegidos por las disposiciones de los artículos 27 y 34 de la Ley Hipotecaria (30 L.P.R.A. secs. 52 y 59). A la moción presentada se unieron certificaciones expedidas por el Registrador de la Propiedad de Río Piedras, sobre la historia registral de la finca, y de la Secretaría del Tribunal Superior, Sala de San Juan, en la cual se transcriben literalmente las tres sentencias que se in-

vocan a los fines de la excepción de cosa juzgada, y una declaración jurada de la demandada Victoria Bolker.

En 29 de noviembre de 1955 el Tribunal Superior de San Juan dictó una resolución declarando sin lugar la solicitud de sentencia sumaria ya que "de la oposición . . . surge que existe una genuina controversia de hechos en este caso que debe ser dilucidada en juicio plenario . . ." Posteriormente, y previa solicitud de reconsideración formulada por la parte demandada, dictó sentencia declarando sin lugar la demanda, "por prescripción extintiva de la acción". En 4 de mayo de 1956 reconsideró nuevamente y dictó resolución declarando sin lugar la moción de sentencia sumaria por entender que le obligaba una afirmación contenida en la opinión concurrente dictada en *Flores* v. *Rodríguez*, 77 D.P.R. 720 (1954) al efecto de que la acción reivindicatoria es imprescriptible. Para revisar esta última resolución expedimos auto de certiorari.

Del estudio que hemos hecho de la moción de sentencia sumaria y la prueba que se acompañó a la misma, así como del escrito de oposición y la prueba que adujo la parte demandante, procede dejar sin efecto la resolución dictada por el Tribunal Superior y en su lugar dictar sentencia declarando sin lugar la demanda por el fundamento de ser procedente la excepción de cosa juzgada(8) interpuesta por las demandadas. Esta conclusión a que hemos llegado hace innecesario que discutamos los demás fundamentos levantados por la parte demandada.

■ La defensa de cosa juzgada no se planteó exclusivamente a base de las alegaciones, sino que la demandada promovente unió a su moción una certificación de la Secretaria del Tribunal Superior, Sala de San Juan, en la cual se trans-

---

(8) En justicia al tribunal recurrido deseamos consignar que de la lectura de las resoluciones que dictó en relación con la moción de sentencia sumaria, se desprende que las partes no insistieron en, y el tribunal recurrido no consideró, la defensa de cosa juzgada levantada por la parte demandada, y que se limitó a resolver sobre la prescripción extintiva de la acción reivindicatoria.

cribieron literalmente las sentencias dictadas en los cásos número 427, 1334 y 3337 de la extinta Corte de Distrito de San Juan, e hizo constar además que se fundaba, entre otras cosas, en los expedientes de dichos casos obrantes en los archivos de este tribunal. Por su parte los demandantes, en su escrito de oposición, expresamente solicitaron del tribunal de instancia que tomase conocimiento de las constancias de uno de dichos pleitos y transcribieron en su oposición algunos fragmentos de la opinión emitida en el caso número 1334. La situación que tenemos ante nos es, por tanto, claramente distinguible de la que consideramos en *Colón* v. *San Patricio Corporation*, 81 D.P.R. 242, 269–271 (1959).(⁹)

■ La excepción de cosa juzgada figura en nuestro Código Civil en el capítulo relativo a la prueba de las obligaciones, y específicamente, en la sección relativa a las presunciones. En efecto, el artículo 1204 del Código Civil (31 L.P.R.A. sec. 3343) dispone que:

" . . .

"Contra la presunción de que la cosa juzgada es verdad, sólo será eficaz la sentencia ganada en juicio de revisión.

"Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.

" . . .

"Se entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad. de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas."

Manresa explica que es en los dos primeros títulos del libro cuarto que están contenidas las reglas y cuestiones que cons-

---

(⁹) En 19 de mayo de 1961 dictamos una orden dirigida a la Secretaría del Tribunal Superior, Sala de San Juan, para que elevara los expedientes de los casos mencionados.

tituyen la parte general del Derecho civil, y añade que "De ahí que este capítulo no esté concretado a la prueba de las obligaciones, sino que abarque y regule el problema de la prueba en cuanto tiene de sustantivo, y en aplicación a toda clase de cuestiones jurídicas que entre las partes surjan; porque, efecto de lo antes dicho, es, que en todo el que reclama un derecho hay bajo el aspecto de la prueba ciertos caracteres del acreedor, y en todo el que se ve compelido al cumplimiento del deber, hay en el mismo sentido algo de deudor." [10]

Como indica Borrell y Soler, [11] precisa distinguir entre los dos efectos que producen las sentencias: "uno positivo, que consiste en su cumplimiento, y otro negativo, o sea la *imposibilidad de reproducir la contienda.* El primer efecto da lugar a la *actio judicati,* y el segundo a la *exceptio rei judicatae.* La acción de una cosa juzgada tiene por objeto exigir el cumplimiento de la sentencia; y la excepción de cosa juzgada impide reproducir la cuestión fallada, promoviendo un nuevo pleito sobre el mismo asunto los que sostuvieron el primero."

En el orden procesal, la Regla 6.3 de las de Procedimiento Civil de 1958, equivalente a la Regla 8(c) de 1943, hace referencia a la cosa juzgada como una de las defensas afirmativas disponibles para el demandado, disposición que se complementa con la Regla 7.5 de 1958, equivalente a la Regla 9(e) de 1943, que indica la forma para alegar la existencia de una sentencia. [12]

Para que prospere la excepción de cosa juzgada es nece-

---

[10] Manresa, Código Civil Español (Madrid, ed. 1950), tomo VIII, vol. II, págs. 1–2.

[11] Derecho Civil Español (Barcelona, ed. 1955), tomo I, pág. 593.

[12] Véanse además, los artículos 126 y 421 a 424 del Código de Enjuiciamiento Civil (32 L.P.R.A. secs. 686 y 1793 a 1796). La Regla 11.1 de 1958, equivalente a la 13(a) de 1943, hace referencia a una modalidad de *res judicata* en relación con la obligación de alegar una reconvención compulsoria. *González* v. *Agostini,* 79 D.P.R. 510 (1956); *Sastre* v. *Cabrera,* 75 D.P.R. 1 (1953). La Regla 39.1(a) se refiere a la defensa de *res judicata* cuando se ha desistido de una reclamación en más de una ocasión. Véase, *Res Judicata-Two Dismissal Rule,* 65 A.L.R.2d 642 (1959).

saria la concurrencia de cuatro identidades: dos objetivas —cosa y causa; *Autoridad de Acueductos* v. *Reyes*, 77 D.P.R. 10, 14–16 (1954); *Silva* v. *Doe*, 75 D.P.R. 209, 214 (1953); *Vidal* v. *Monagas*, 66 D.P.R. 622 (1946); *Junta Insular de Elecciones* v. *Corte*, 63 D.P.R. 819 (1944); Sentencia Núm. 61 del Tribunal Supremo de España de 20 de marzo de 1956 (Jurisp. Civil III, tomo 55, pág. 726); y dos subjetivas— personas y representación. *Camacho* v. *Iglesia Católica*, 72 D.P.R. 353 (1951); *Ex parte Soto; Rodríguez, Int.*, 71 D.P.R. 547 (1950); *Municipio* v. *Ríos*, 61 D.P.R. 102, 105 (1942); *De León* v. *Colón*, 42 D.P.R. 22 (1931). Además, la sentencia que se invoque debe tener el carácter de firme, pues contra la presunción de cosa juzgada "sólo será eficaz la sentencia ganada en juicio de revisión", y el tribunal que la dictó debe haber actuado con jurisdicción, *Tartak* v. *Tribunal de Distrito*, 74 D.P.R. 862 (1953); *Sucrs. Huertas González* v. *Díaz*, 72 D.P.R. 537, 540 (1951); *Muñoz* v. *Pardo*, 68 D.P.R. 612 (1948); *Pueblo* v. *López*, 67 D.P.R. 780 (1947); *Res judicata effect of judgment dismissing action, or otherwise denying relief, for lack of jurisdiction or venue*, 49 A.L.R.2d 1036 (1956); aun cuando haya sido dictada en rebeldía, *Rosado* v. *Registrador*, 71 D.P.R. 553 (1950); *Doctrine of res judicata as applied to judgments by default*, 128 A.L.R. 472 (1940); o se trate de una sentencia por consentimiento, *Lebrón* v. *P. R. Ry., Light & P. Co.*, 78 D.P.R. 683, 694 (1955); *Consent judgment as res judicata*, 2 A.L.R.2d 514 (1948). Claro está, no puede oponerse la defensa de cosa juzgada cuando la sentencia se obtuvo por fraude, *Aybar* v. *Vara*, 51 D.P.R. 186 (1937), o la acción se desestimó por haberse radicado prematuramente, *Fels* v. *Biascoechea*, 77 D.P.R. 681 (1954); *Chabrán* v. *Méndez*, 74 D.P.R. 768 (1953). En España prevalece igual doctrina y se ha sostenido repetidamente que "no produce excepción de cosa juzgada la sentencia que no expresa resolución sobre lo que constituyó el nervio y raíz del pleito actual, absteniéndose

de conocer la cuestión debatida por un aspecto puramente formal". Sentencias de 23 de febrero de 1956 (Jurisp. Civil, III, tomo 64, pág. 1411) ; 13 de junio de 1951 (Jurisp. Civil, III, tomo 35, pág. 251) ; 21 de junio de 1946 (Jurisp. Civil, III, tomo 15, pág. 281). De ahí que se haya formulado la distinción entre la llamada cosa juzgada en el sentido formal —cuando el juzgador en el primer pleito no entró en el fondo de las pretensiones del actor, limitándose a desestimar la acción por defectos puramente formales—y en el sentido material—cuando el tribunal resuelve la cuestión planteada en su fondo. (Sentencias de 12 de julio de 1951 (Jurisp. Civil, III, tomo 35, pág. 818) y 13 de octubre de 1952 (Jurisp. Civil, III, tomo 40, pág. 69).

Establecidos estos principios generales, es preciso que examinemos los hechos de los pleitos anteriormente mencionados para determinar, si en efecto, concurre la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. Debemos consignar que, aunque no surge afirmativamente de la certificación expedida por la Secretaria del Tribunal Superior, Sala de San Juan, las sentencias que se invocan son firmes. Tampoco se ha impugnado la jurisdicción del tribunal para dictarlas, y del examen que hemos hecho no surge lo contrario. Veamos.

### Pleito Núm. 427

*Herederos de Manuel Sosa Gil* v. *Ignacio Arzuaga e Izaguirre et al.*

Esta acción, que se intituló nulidad de escrituras, reivindicación de propiedad inmueble e indemnización de daños y perjuicios, se inició en 29 de noviembre de 1905 por los hermanos José, Leocadio, Pedro y Valentina Sosa Cruz, como herederos de don Manuel Sosa Gil, contra Ignacio Arzuaga, Francisco Yereguí y Victoria Bolker. En la misma se hizo constar todo lo relacionado con la transacción de venta entre Sosa y Arzuaga a que hemos hecho referencia anteriormente,

là declaración contenida en el testamento otorgado por don Ignacio Arzuaga reconociendo que el título de la estancia Canovanillas pertenecía a Sosa; que en el testamento otorgado por Sosa en 13 de abril de 1896 éste expresó que "en la actualidad no posee bienes de ninguna clase, pero por si algunos resultasen a su fallecimiento", instruyó que se pagaran ciertas deudas y legados, e instituyó por sus únicos y universales herederos a sus hijos y nietos mencionados, designó como albacea, en primer término a don Ignacio Arzuaga, y en segundo lugar, a don Francisco Yereguí; que Yereguí practicó la división de los bienes relictos al fallecimiento de Sosa, y que los demandantes, creyendo en la buena fe del albacea, aceptaron la referida división, y no reclamaron hasta 1904 en que, al tener conocimiento de la declaración hecha por Arzuaga en su testamento, requirieron de Yereguí la devolución de la finca; que Yereguí le hizo donación de la finca a Victoria Bolker, con quien había vivido por espacio de algunos años y había procreado tres hijos naturales, aunque la transacción se figuró como una de compraventa; que don Pedro Arzuaga, apoderado de don Ignacio Arzuaga, tenía conocimiento de que la finca en cuestión era de la propiedad de la Sucesión Sosa, como también lo sabía don Francisco Yereguí. Solicitaron finalmente se anularan todas las escrituras de traspaso, incluyendo la de venta a favor de doña Victoria Bolker, y que se condenara a los demandados a entregar la finca y los frutos producidos, y en caso de ser esto improcedente, a satisfacer determinada suma por el valor de la finca, intereses, e indemnización de daños y perjuicios.

Celebrado el juicio correspondiente, se dictó sentencia en 22 de octubre de 1906, que copiada a la letra lee como sigue:

"El día 25 de septiembre de 1906, habiendo sido llamado este pleito para vista por su orden de calendario y anunciando las partes estar listas para aquella y presentes sus abogados, procedió el demandante a practicar su prueba testifical y documental; después de lo cual los demandados también practicaron la suya de igual clase.

"Y la Corte, tomando en consideración las alegaciones, las pruebas todas y las argumentaciones de los abogados, así como los hechos presentados, decide que los hechos y la ley están a favor de los demandados y en contra de los demandantes, cuya reclamación debe ser y es desestimada con las costas; y en consecuencia también sin lugar la reconvención de los demandados. El Secretario anotará un fallo de conformidad con esta decisión."

## Pleito Núm. 1334

*Marcelino Sosa y otros* v. *Ignacio Arzuaga e Izaguirre y otros*

En 23 de febrero de 1907, varios nietos de don Manuel Sosa y Gil, a saber, Marcelina, Pedro y Emilia Sosa (hijos de Fernando Sosa Cruz); Bruno y Evangelista Sosa González([13]) (hijos de José Encarnación Sosa Cruz); María Antonia, Domingo, Francisca, Concepción e Inés Araújo Sosa (hijos de Eladia Sosa Cruz), iniciaron un pleito sobre nulidad de escrituras, reivindicación de propiedad inmueble e indemnización de daños y perjuicios contra don Ignacio Arzuaga, Francisco Yereguí y Victoria Bolker. En la demanda se hizo referencia a la venta de Sosa y Arzuaga, y se alegó que dicha venta quedó ineficaz y sin efecto alguno por la declaración y confesión hecha por este último en el testamento que otorgara; y en general, se reprodujeron las alegaciones sobre los traspasos de la estancia Canovanillas que fueron efectuados y a los que nos hemos referido anteriormente. Se alegó además que en la escritura de partición del caudal relicto al fallecimiento de Sosa no habían concurrido por sí ni por medio de representación legal los demandantes Emilia Sosa Medero y los hermanos Araújo-Sosa, quienes eran menores de edad para la fecha en que se otorgó la escritura de partición.

---

([13]) Deseamos hacer constar que en el pliego de la demanda presentada no aparece el nombre de Evangelista Sosa González, pero en la opinión dictada se dice que la demanda la establecieron, entre otros, "Bruno Sosa y otro cuyo nombre no ha sido consignado en el título de la demanda, como herederos de José Encarnación Sosa Cruz". Un examen de las alegaciones en el caso núm. 3337 y de la presente demanda, revela que este heredero de José Encarnación Sosa Cruz, cuyo nombre se omitió, no es otra que Evangelista Sosa González.

En 26 de junio de 1908 se dictó sentencia declarando sin lugar la demanda. En cuanto se refiere a la demandada Victoria Bolker, se dijo específicamente en la opinión emitida que:

"Pero aunque todas esas nulidades fueran procedentes, estando hoy la finca en poder y dominio de Victoria Bolker, *es una tercera contra la que no se puede reivindicar* porque teniendo su título inscrito en el Registro de la Propiedad la ampara la Ley Hipotecaria toda vez que ella no tuvo intervención en los actos y contratos que se tachan de nulos ni las nulidades alegadas constan en los libros del Registro de la Propiedad.

"Entendemos por el resultado de la prueba que Victoria Bolker no compró la finca 'Canovanillas' y que esa causa de obligación es falsa pero como existe otra causa verdadera, cual es la donación, resulta siempre válido ese contrato sin que importe *para su derecho de tercero* que adquiriera por título oneroso o lucrativo toda vez que la vigente Ley Hipotecaria no hace distinción entre una y otra clase de título en cuanto a los terceros, pues suprimió la limitación que la anterior ley reservaba a los títulos onerosos.

"En tales condiciones los demandantes, no siendo nulos ni anulables los contratos de que se deja hecha mención y no pudiendo hoy reivindicar la finca 'Canovanillas', podrán tener contra Ignacio Arzuaga una acción por daños y perjuicios por haber dispuesto y enajenado por su apoderado Pedro Arzuaga una finca que no le pertenecía, pero como tal acción de daños es personal y no es residente en esta Isla dicho demandado ni ha sido citado personalmente ni puede ser demandado ante los tribunales de la Isla sin que obste a ellos el que ha comparecido a defenderse toda vez que lo hizo en cuanto a las acciones reales y en cuanto a esa personal alegó la falta de jurisdicción de la Corte."

Interpuesto recurso de apelación contra dicha sentencia, este Tribunal desestimó la apelación por incumplimiento del artículo 50 del Reglamento del Tribunal Supremo, *Sosa* v. *Arzuaga*, 14 D.P.R. 892 (1908).

## Pleito Núm. 3337

*Valentina Sosa Cruz et al* v. *Ignacio Arzuaga Izaguirre at al*

En 21 de octubre de 1909 se inicia una nueva acción que se intitula de reivindicación de propiedad inmueble, nulidad de escrituras e indemnización de daños y perjuicios. Figuraron como demandantes los hermanos Valentín, José, Leocadio y Pedro Sosa Cruz, hijos de don Manuel Sosa Gil, y varios nietos y biznietos de éste, a saber, Marcelina, Julio, Pedro, Faustino y Emilia Sosa (hijos de Fernando Sosa Cruz); José, Elisa y Carmen Baquero Sosa (nietos de Fernando Sosa Cruz, hijos de su hija Segunda); María Antonia, Domingo, Francisca, Concepción e Inés Araújo-Sosa (hijos de Emilia Sosa Cruz); y Bruno y Evangelista Sosa (hijos de José Encarnación Sosa Cruz). Se incluyó como demandados a don Ignacio Arzuaga, don Pedro Arzuaga y don Francisco Yereguí y doña Victoria Bolker. En la demanda se alegaron más o menos los mismos hechos que en las anteriores, y se expuso además que los demandados tenían perfecto conocimiento de que la finca era de la Sucesión de don Manuel Sosa Gil, y que al verificar las operaciones sobre liquidación "obraban a ciencia y consciencia de que hacían mal, y puestos los cuatro de acuerdo, voluntaria y maliciosamente privaron a los demandantes de los derechos que legítimamente les correspondían en la descrita finca, traspasándola a doña Victoria Bolker para alegar después que era un tercero y desvirtuar la reclamación de los demandantes".

Esta demanda fue excepcionada, y mediante resolución de 4 de enero de 1910, se desestimó la misma. La demanda fue enmendada en 2 de febrero de dicho año, y nuevamente excepcionada y desestimada. La resolución de desestimación fue revocada por este Tribunal en *Sosa et al* v. *Arzuaga et al*, 17 D.P.R. 1083 (1911). Mediante moción de 7 de diciembre de 1914 la parte demandante compareció y expuso que "desean desistir de su acción en cuanto se dirige en contra de la demandada Victoria Bolker y seguirla solamente en cuanto

al cobro de daños y perjuicios en contra de los otros demandados".([14])   Así lo ordenó el tribunal en 9 de diciembre, "sin perjuicio".   Posteriormente se radicó una segunda demanda enmendada dirigida exclusivamente contra los herederos de don Ignacio Arzuaga, en reclamación de daños y perjuicios. En 22 de noviembre de 1920 se dictó sentencia ordenando el archivo y sobreseimiento de este pleito por causa de abandono.

Conviene indicar que no podemos dar valor alguno a la sentencia de archivo dictada en el pleito número 3337 (núm. 329 de la Sección Segunda) a los fines de establecer la excepción de cosa juzgada.   La regla general es que, en ausencia de una disposición de ley o regla de procedimiento, una sentencia desestimando una demanda por abandono o falta de instancia, no impide al demandante el proseguir otro pleito sobre la misma causa.   Esta proposición se deriva del principio general que requiere una adjudicación en los méritos para que pueda prosperar la defensa de cosa juzgada. *Capella* v. *Carreras*, 57 D.P.R. 258 (1940) ; *Dismissal as Res Judicata*, 54 A.L.R.2d 473, 501 (1957) ; cf. *Antonio Roig Sucrs.* v. *Corte*, 66 D.P.R. 446 (1946) ; *Reyes* v. *Reyes*, 76 D.P.R. 284, 295 (1954).   Como la sentencia a que nos referimos fue dictada antes del 1 de septiembre de 1943, no son de aplicación las disposiciones de la Regla 41($b$) de 1943 y la Regla 39.2 de 1958.([15])   *Meléndez* v. *Cividanes*, 63 D.P.R.

---

([14]) Con toda probabilidad este desistimiento obedeció a la determinación en el pleito anterior sobre el carácter de tercero hipotecario de dicha demandada.

([15]) Dichas reglas disponen en la parte pertinente:   Regla 41(b) :   "Si el demandante dejare de proseguir acción . . . un demandante puede solicitar la desestimación de la acción o de cualquier reclamación contra él . . . A menos que la Corte en su orden de desestimación lo especifique de otro modo, una desestimación bajo esta subdivisión y una desestimación no provista por esta Regla—excepto la que se hubiere dictado por falta de jurisdicción—tienen el efecto de una adjudicación en los méritos."   Regla 39.2:   Si el demandante dejare de proseguir el pleito o de cumplir con estas reglas o con cualquier orden del tribunal, un demandado podrá solicitar la desestimación del pleito o de cualquier reclamación contra él . . . A menos que el tribunal en su orden de desestimación lo disponga de otro modo, una desestimación bajo esta Regla 39.2 y cualquier otra

4, 13 (1944); *Berdecia* v. *Tyrell, per curiam,* resuelto en 22 de abril de 1956. Por otro lado, la sentencia invocada se dictó en relación con la segunda demanda enmendada presentada por la demandante y que se limitaba a reclamar indemnización por daños y perjuicios a los herederos de don Ignacio Arzuaga. Aun cuando se incluyó inicialmente a doña Victoria Bolker como parte demandada, se desistió de la acción en cuanto a ella, y el tribunal ordenó el desistimiento "sin perjuicio". Véase, *Albizu* v. *Royal Bank of Canada,* 46 D.P.R. 503 (1934); *Capella* v. *Carreras,* supra; cf. *Estapé* v. *Rocafort,* 2 S.T.S. 252, 270.(1901); *Judgment "without prejudice" res judicata,* 149 A.L.R. 553, 583 (1944).

Empero, a poco se examinen los hechos envueltos en los pleitos número 427 y 1334, se comprobará que los demandantes están impedidos de proseguir la presente acción, por existir cosa juzgada respecto a las cuestiones que se plantean. El objeto de todas las demandas es el mismo, o sea reivindicar la estancia Canovanillas,(16) y las causas para solicitar la nulidad del título que tiene inscrito doña Victoria Bolker son las mismas que han venido alegándose desde que los herederos de Manuel Sosa Gil emprendieron su larga peregrinación judicial. Aun cuando las causas de nulidad alegadas hubiesen sido distintas, si el objeto final de la acción es el mismo, los demandantes no pueden prevalecer. *Cintrón* v. *Yabucoa Sugar Co.,* 54 D.P.R. 518 (1939); *González* v. *Méndez, et al,* 15 D.P.R. 701 (1909). Y esta solución es idéntica aunque las sentencias en que se apoye la excepción de cosa juzgada sean erróneas, *Quintero* v. *Morales,* 25 D.P.R. 118 (1918);

desestimación, excepto la que se hubiere dictado por falta de jurisdicción, o por haber omitido acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos."

(16) La descripción de la finca en todos los pleitos, incluyendo el presente, es sustancialmente similar. Con excepción de ciertas diferencias en la cabida alegada y la referencia a una construcción que enclava en la misma, el resto de la descripción es idéntico, especialmente en cuanto se refiere a la identificación de los colindantes. Por otro lado, la referencia registral a la inscripción, cuando se hizo figurar, es la misma.

cf. *Res Judicata — Matters Concluded — Judgment under Statute Subsequently Found Unconstitutional is Res Judicata on Issue of Constitutionality*, 73 Harv. L. Rev. 416 (1959) ; *Validity and effect of judgment based upon erroneus view as to constitutionality or validity of estatute or ordinance going to the merits*, 16 A.L.R. 517, 532 (1947) ; pues como dice Manresa, "el fundamento de las cosas juzgadas no está en una pretensión de infalibilidad en el juzgador, ni menos en el intento de ocultar sus errores" [17] ya que la regla de cosa juzgada es una de justicia fundamental y sustancial, rodeada de interés público, y se dirige a conservar la paz privada, *Cintrón* v. *Yabucoa Sugar Co.*, 54 D.P.R. 518 (1939), a evitar que se eternicen las controversias judiciales, y se funda en la conveniencia de dar la debida dignidad a las actuaciones de los tribunales.

En cuanto a la identidad de partes, resulta claro que los aquí demandantes figuran en la capacidad de demandantes en uno o ambos pleitos anteriores, bien personalmente o como causahabientes de algunos de los que allí contendieron. *Araújo* v. *Arenas*, 60 D.P.R. 284 (1942) ; Sentencia núm. 147 de 21 de febrero de 1957, Jurisp. Civil, III, tomo 59, pág. 1575, 1589). Los demandantes Manuel, Eusebio, Georgina, Pedro, Francisca, Agripina, Amparo y Eladio Sosa Rodríguez están obligados por la sentencia dictada contra su padre Pedro Sosa Cruz en el pleito núm. 427; los demandantes Francisco y José Sosa Rodríguez están igualmente afectados por la sentencia dictada contra su padre José Sosa Cruz en el mencionado litigio; y, en igual situación se encuentran los demandantes María Antonia Sosa Pérez y Luis Medero Sosa por haber sido sus padres Leocadio y Valentina Sosa Cruz partes en dicha acción. En cuanto a la demandante Evangelista Sosa González la excepción de cosa juzgada le es oponible por haber figurado personalmente como demandante en la acción núm. 1334.

---

[17] Manresa, *op. cit.*, pág. 225.

Insisten los demandantes, sin embargo, que la sentencia dictada en 26 de junio de 1908 en la acción núm. 1334, es nula "por absurda y carente de fundamento . . . sobre la base de tales conclusiones de hecho y de derecho". Transcriben en forma fragmentaria varias determinaciones de hecho[18] contenidas en la opinión dictada en dicho pleito. No obstante, la conclusión de derecho que estableció el tribunal, después de considerar las referidas determinaciones de hecho, fue que la señora Bolker tenía el carácter de tercero hipotecario protegido por la ley. Aun cuando pudiera sostenerse que tal conclusión es contraria a derecho, la defensa de *res judicata* puede invocarse aunque los fundamentos de la

---

[18] Las determinaciones a que hace referencia la parte demandante son las siguientes:

(*a*) "La situación de las cosas en mayo de 1895 era pues que Arzuaga por valor recibido había vendido a Sosa Gil la expresada finca por más que figurara a su nombre por no haber otorgado la correspondiente escritura pública que para el caso exigía la ley.

(*b*) ". . . no nos satisface la prueba del demandado de que lo que hubo fue otra venta de Sosa Gil a Arzuaga con respecto a la misma finca pero sin entregarle éste el precio que quedó retenido para entregarlo cuando se le exigiese el vendedor . . ."

(*c*) "Sosa Gil a su muerte era dueño de 'Canovanillas' y Arzuaga por el precio que tenía recibido debía otorgarle la escritura de propiedad.

(*d*) "Tal finca era lo que tenían derecho a dividirse los herederos de Sosa Gil . . .

(*e*) "Arzuaga en su testimonio declaró no pertenecerle la finca de Sosa y ordenó que se le traspasara de nuevo por su albacea.

(*f*) "Yereguí era administrador de la hacienda Buena Vista en que molía Sosa Gil sus cañas y que en parte pertenecía al demandado Arzuaga, este solo hecho basta para afirmar que él conocía el testamento de Arzuaga y que estaba enterado de las negociaciones que tuvo con Sosa Gil.

(*g*) "Victoria Bolker . . . había sido concubina de Yereguí por mucho tiempo.

(*h*) "Cuando Yereguí y Victoria Bolker otorgaron su contrato de 29 de enero de 1899, era ésta de condición tan pobre que su situación económica y modo de vivir hacen increíble admitir que tuviera $10,000 . . .

(*i*) ". . . no nos satisface la prueba testifical del demandado tendiente a demostrar que allá por enero o febrero de 1898 y con posterioridad a lo que Arzuaga consignó en su testamento, volvió éste de nuevo a comprar la finca, aunque quedando el precio en su poder, y sin otorgarse nuevo documento por existir el anterior.

(*j*) "Entendemos por el resultado de la prueba que Victoria Bolker no compró la finca 'Canovanillas' y que esa causa de obligar es falsa . . ."

sentencia sean erróneos, siempre que se hubiere dictado con jurisdicción y en ausencia de fraude. *McFadden* v. *McFadden*, 357 P.2d 751 (Kan. 1960) ; *Matthews* v. *Wolvin*, 266 F.2d 722 (C.C.A. 5, 1959) ; *Phoenix Ins. Co.* v. *Haney*, 108 So.2d 227 (Miss. 1959) ; *California Co.* v. *Price*, 99 So.2d 743 (La. 1957) ; *Gelb* v. *Mazzeo*, 169 N.Y.S.2d 58 (1957).

Bajo estas circunstancias, la procedencia de la sentencia sumaria solicitada no está sujeta a discusión, aun aceptando que existe una controversia genuina sobre los hechos pertinentes a la causa de acción ejercitada, especialmente en cuanto se refiere al título que alega la demandada haber adquirido por usucapión. Sin embargo, la excepción de cosa juzgada envuelve una cuestión sobre la cual no hay controversia alguna, y existiendo los requisitos de identidad que se requieren para su aplicación, procede dictar la sentencia correspondiente. *Ramos* v. *Pueblo*, 67 D.P.R. 640 (1947) ; cf. *Vega* v. *P. R. Railroad and Transport Co.*, 79 D.P.R. 401 (1956) ; *Municipio* v. *Tribunal Superior*, 78 D.P.R. 816 (1955).

*Se dictará sentencia revocando la resolución del Tribunal Superior, Sala de San Juan, de fecha 4 de mayo de 1956, y se devuelve el caso para que se proceda a dictar sentencia declarando sin lugar la demanda en cuanto se refiere a las demandadas Victoria y Manuela Bolker.*