SENTENCIA
Los peticionarios de epígrafe acudieron ante nuestra consideración, mediante un recurso de certiorari, de un dictamen del Tribunal de Apelaciones que había revocado al foro primario que había desestimado, a su vez, la demanda instada. Expedimos el auto.
Ambas partes han comparecido y, luego de evaluar los argumentos esgrimidos, se revoca la sentencia del Tribunal de Apelaciones y se desestima la demanda presentada.
Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión de conformidad, a la que se le unieron el Juez Presidente Señor Hernández Denton y la Jueza Asociada Señora Fiol Matta. El Juez Asociado Señor Rivera Pérez hace constar la siguiente ex-presión, a la cual se unió la Jueza Asociada Señora Pabón Charneco: “El Juez Asociado Señor Rivera Pérez concurre con el resultado por entender que el derecho de uso y disfrute del Consejo de Titulares del Condominio Beacon Hill *345 Terrace sobre la finca número 2585, donde están ubicadas las facilidades recreativas, la cisterna, la subestación eléctrica, la descarga sanitaria, las piscinas, los kioskos, los decks de madera, los baños, las áreas verdes o los patios o tanques para proveer agua a los edificios sobre los cuales se constituyó tal Consejo de Titulares, consta claramente del Registro de la Propiedad y afecta a terceros adquirientes de la referida finca número 2585.”
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

Opinión de conformidad emitida por la
Juez Asociada Señora Rodríguez Rodríguez, a la que se le une el Juez Presidente Señor Hernández Denton y la Jueza Asociada Señora Fiol Matta.
Está ante nuestra consideración una sentencia del Tribunal de Apelaciones mediante la cual dicho foro revocó un dictamen del Tribunal de Primera Instancia, que a su vez había desestimado una demanda sobre sentencia declaratoria bajo el fundamento de cosa juzgada. El foro recurrido determinó que la excepción de la cosa juzgada no impide que, mediante el mecanismo de sentencia declaratoria, se aclare el estado de derecho entre las partes cuando el mismo está en controversia. Al así resolver, el Tribunal de Apelaciones no consideró si, en efecto, concurrían los requisitos para la aplicación de la doctrina de cosa juzgada entre un procedimiento judicial instado por el Consejo de Titulares de un inmueble sometido al régimen de propiedad horizontal y un procedimiento posterior instado por los titulares de los apartamentos que conforman el régimen. Examinemos los hechos de los cuales surge la controversia entre las partes.
*346 I
Norman Halvorsen (Halvorsen) comenzó el desarrollo de un proyecto para la construcción de un complejo de condominios que estaría ubicado en la finca identificada con el número 2585 en el Registro de la Propiedad, Sección II de Carolina.(1) El proyecto se construiría en fases, incluiría seis edificios y otras instalaciones, cuyo uso se compartiría entre los edificios que finalmente se construyeran.
Para iniciar dicho desarrollo, Halvorsen segregó de la finca 2585 la finca con el número 22,064, y en esta última construyó dos edificios. Estas estructuras se sometieron al Régimen de Propiedad Horizontal mediante una escritura pública otorgada el 13 de diciembre de 1988, constitutiva del Condominio Beacon Hill Terrace (Condominio Beacon Hill).
En la referida escritura se hizo constar que el Condominio Beacon Hill formaba parte de un desarrollo en etapas propuesto para la finca número 2585. La primera de las etapas proyectadas consistía, precisamente, en la construcción de los edificios sobre los cuales se constituyó el régimen de propiedad horizontal del Condominio Beacon Hill. La segunda etapa, según descrita en la escritura de constitución, consistiría de la construcción de dos edificios adicionales, un kiosco, unas facilidades de lavandería y dos piscinas. En la última etapa se construirían otros dos edificios, la tercera piscina, una cancha de tenis y una oficina de administración. Específicamente, en el acápite trigésimo tercero de la escritura de constitución, se hizo constar lo siguiente:
Es el interés de Halvorsen que todos los condómin[o]s del Condominio “BEACON HILL” tengan acceso y derecho al uso y disfrute de las facilidades recreativas, lavandería y oficina de *347 administración a construirse en dichas etapas en la parcela [finca 2585], salvo cuando se pacte o se establezca en contrario por Halvorsen, su sucesor o cesionario o el que desarrolle el resto de la parcela. Apéndice del Escrito sobre moción informativa, pág. 98.
En 1989, luego de iniciada la venta de los apartamentos, B.H.T., S.E. (B.H.T.) adquirió de Halvorsen, mediante compraventa, las fincas 22,064 y 2585. Según expusimos previamente, en la primera de ambas fincas se construyeron los edificios del Condominio Beacon Hill. Por otra parte, en la finca 2585 se ubicaron las instalaciones que proveían los servicios centrales de agua y electricidad al Condominio Beacon Hill. Aunque no se culminó con el desarrollo que inicialmente se programó, en la finca 2585 se construyeron, además, dos de las piscinas proyectadas.
Así las cosas, en el 1992, el Presidente de la Junta de Directores del Condominio Beacon Hill presentó una querella ante el Departamento de Asuntos del Consumidor (D.A.Co.) contra B.H.T., como administradora interina del condominio. Entre otros aspectos, alegó que B.H.T. no había realizado el traspaso de la administración ni acreditado los gastos correspondientes a las sumas reclamadas como cuotas de mantenimiento.
A raíz de dicha querella, el 15 de mayo de 1992 D.A.Co. emitió una resolución mediante la cual determinó que formaban parte de los elementos comunes del Condominio Beacon Hill, entre otros, las instalaciones de servicios centrales tales como electricidad, agua, tanque y bomba de agua ubicadas en la finca 2585. Por otra parte, dispuso que los condominos tenían derecho al uso de las piscinas construidas en la finca 2585, así como el deber de contribuir proporcionalmente a su mantenimiento. Ordenó a B.H.T. que se abstuviera de impedir el acceso de los condominos a esas facilidades recreativas.
Tras la resolución emitida por D.A.Co., la Asociación de Condominos —representada por el Presidente de la Junta de Directores— y B.H.T. llegaron a varios acuerdos suscri *348 tos en un documento privado. En el inciso cuarto de dicho documento se dispuso, en lo referente a la piscina y al área recreativa, el acuerdo siguiente: “La asociad [ó] n desea utilizar las facilidades de la piscina y del [á]rea recreativa que pertenecen al desarrollador. Por esto[,] la Asociaci[ó]n a partir de este momento pagar[á] el consumo mensual por la electricidad a la AEE a su costo y se encargar [á] de mantener la piscina y [las áreas verdes] en buen estado ...”. El 7 de junio de 1992, en virtud de los acuerdos suscritos entre las partes, se solicitó el cierre y archivo del caso ante la agencia administrativa.
En el ínterin de los procedimientos ante D.A.Co., el 18 de mayo de 1992 Halvorsen presentó una demanda contra B.H.T. sobre cobro de dinero y ejecución de una hipoteca que gravaba la finca 2585 (caso civil número FCD92-0092). El Tribunal de Primera Instancia declaró “con lugar” la demanda y ordenó a B.H.T. el pago de lo adeudado. Posteriormente, dicho foro ordenó la expedición del mandamiento de ejecución de la hipoteca que gravaba la finca 2585.
El 22 de agosto de 2002, la Asociación de Condominos de Beacon Hill Terrace (Asociación de Condominos) solicitó la intervención en el procedimiento, aun pendiente en el Tribunal de Primera Instancia, sobre cobro de dinero y ejecución de hipoteca. Ante la posible venta en subasta pública de la finca 2585, solicitaron al foro primario que dictara una orden enmendada de ejecución de sentencia en la cual se estableciera que los adquirentes de dicha finca debían honrarle el derecho de uso y disfrute sobre las áreas recreativas, en particular, sobre las piscinas enclavadas en la referida propiedad.
Tras varios trámites interlocutorios, se concedió la intervención solicitada. La Asociación de Condominos solicitó entonces al foro primario que emitiera una orden al Registrador de la Propiedad, Sección II de Carolina, para que éste anotara el derecho que alegadamente poseían sobre *349 las facilidades comunales, incluso las dos piscinas, ubicadas en la finca 2585. Esta solicitud fue declarada “sin lugar” por el Tribunal de Primera Instancia.
Inconforme, la Asociación de Condominos recurrió al Tribunal de Apelaciones (KLCE200301578). El foro apelativo, mediante Resolución de 30 de diciembre de 2003, ex-puso que del acuerdo suscrito ante D.A.Co. en 1992 surgía que el desarrollador conservaba la titularidad de la piscina y el área recreativa. Indicó que la Asociación de Condominos no poseía el derecho reclamado y sostuvo que el Tribunal de Primera Instancia no podía emitir una orden de inscripción al Registrador de la Propiedad. Como consecuencia de este razonamiento, denegó la expedición del auto solicitado. La Asociación de Condominos recurrió ante este Foro, y en aquella ocasión denegamos la expedición del auto.
Posteriormente, el 23 de febrero de 2005, el Consejo de Titulares del Condominio Beacon Hill (Consejo de Titulares), representado por el Presidente de la Junta de Directores, presentó una demanda sobre sentencia declaratoria contra Halvorsen y B.H.T. (FAC 05-0177). Solicitó que se declarara su derecho de uso sobre la subestación eléctrica, el tanque, la bomba de agua y las tuberías de agua y sanitarias instaladas en la finca 2585, que proveen servicio al Condominio. Reclamó que estos últimos constituían elementos comunes cuya titularidad residía en el Consejo de Titulares. Además, adujo que en la finca 2585 enclavaban dos piscinas sobre las cuales los condominos tenían un derecho de uso y disfrute. El Consejo de Titulares solicitó al foro primario que dictara una orden de ejecución enmendada en la cual se indicara que los adquirentes de la finca debían honrarle sus derechos de uso o de propiedad sobre las referidas facilidades. Por último, solicitó al tribunal que emitiera una orden dirigida al Registrador de la Propiedad, Sección II de Carolina, para que éste inscribiera los derechos que alegadamente poseían sobre las instalaciones antes mencionadas.
*350 El 21 de junio de 2005, mientras se dilucidaba la demanda sobre sentencia declaratoria presentada por el Consejo de Titulares (FAC 2005-0177), los titulares del Condominio Beacon Hill (titulares) comparecieron ante el Tribunal de Primera Instancia, en su carácter individual, y presentaron una segunda demanda sobre sentencia declaratoria contra Halvorsen y B.H.T (FAC 2005-1516). Los titulares adoptaron como parte integral de la demanda instada las alegaciones presentadas por el Consejo de Titulares en el caso FAC 05-0177. Reclamaron que al constituirse el régimen de propiedad horizontal, el Consejo de Titulares adquirió la titularidad sobre las instalaciones alegadamente comunales ubicadas en la finca 2585. Asimismo, adujeron que, al constituirse el régimen, los titulares adquirieron un derecho de servidumbre y de uso sobre las referidas facilidades. Nuevamente, solicitaron al Tribunal de Primera Instancia que emitiera una orden para que el Registrador de la Propiedad inscribiera los derechos reclamados. Además, solicitaron el resarcimiento por los daños y perjuicios alegadamente sufridos como consecuencia de la falta de publicidad registral de los derechos invocados.
Luego de haberse presentado la segunda demanda sobre sentencia declaratoria (FAC 2005-1516), los titulares solicitaron al tribunal la consolidación de ese caso con el caso FAC 2005-0177. Expusieron entonces, como fundamento para la consolidación, que entre la demanda instada por el Consejo de Titulares —compuesto por ellos— y la demanda instada por los titulares en su carácter individual concurrían iguales cuestiones de hecho y de derecho. La petición de consolidación no fue concedida.
Así las cosas, el 31 de octubre de 2005, el foro primario desestimó, por el fundamento de cosa juzgada, la demanda instada por el Consejo de Titulares correspondiente al caso FAC 2005-0177. Determinó que los titulares, según lo establecido en la Escritura Matriz y el acuerdo presentado *351 ante D.A.Co. en 1992, sólo tenían el derecho al uso y disfrute de las facilidades de la finca 2585, mientras que B.H.T. conservaba la titularidad de los terrenos. De otra parte, hizo referencia a la resolución del Tribunal de Apelaciones en el caso KLCE200301578, previamente discutida.
El Consejo de Titulares apeló la determinación del foro primario (KLAN200501584). El 19 de junio de 2006, el Tribunal de Apelaciones confirmó la determinación del Tribunal de Primera Instancia. Expuso que desde 1992 D.A.Co. reconoció un derecho de usufructo a los titulares, y el derecho propietario al desarrollador. Por otro lado, el Tribunal de Apelaciones consideró que en la sentencia apelada se reconocía el derecho de usufructo de los titulares sobre las facilidades en cuestión y afirmó que esto era suficiente para lograr la inscripción registral de ese derecho.(2) Dicho dictamen advino final y firme.
Posteriormente, el 27 de octubre de 2006, el Tribunal de Primera Instancia emitió una sentencia en el caso PAC 2005-1516, mediante la cual desestimó con perjuicio la demanda instada por los titulares bajo el fundamento de la doctrina de cosa juzgada o impedimento colateral.
De dicha determinación recurrieron los titulares al Tribunal de Apelaciones (KLAN200601594). El foro apelativo expuso que el mecanismo de sentencia declaratoria tiene el propósito de dilucidar una controversia sustancial entre partes con intereses legales adversos. Afirmó que si el Tribunal de Primera Instancia constataba que prevalecía una controversia sobre el derecho de los titulares, en relación con las instalaciones de la finca 2585, la cosa juzgada no constituía impedimento para que dicho foro ejerciera su *352 jurisdicción y dilucidara los derechos de las partes. El Tribunal de Apelaciones revocó la sentencia apelada y devolvió el caso al Tribunal de Primera Instancia. Dispuso que, en caso de que prevaleciera una controversia entre las partes sobre el ámbito de sus derechos, procedía dilucidarla mediante el mecanismo de sentencia declaratoria.
Inconformes, Robert Halvorsen y Anne Snell (peticionarios) acuden ante este Foro mediante un recurso de certiorari.(3) Aducen, entre otros aspectos, que erró el foro apelativo al devolver el caso al Tribunal de Primera Instancia tras determinar que la doctrina de cosa juzgada no impide dilucidar una controversia sobre derechos de las partes mediante el mecanismo de sentencia declaratoria.(4) Indican que incurrió en error el foro apelativo al no considerar si, en efecto, concurrían los elementos requeridos para que aplicara la referida doctrina.
Por su parte, los titulares aducen que no se cumple con el requisito de identidad entre las partes para que surta efectos la excepción de la cosa juzgada. Exponen que el procedimiento precedente lo instó el Consejo de Titulares, el cual ostenta una personalidad jurídica independiente a los titulares que lo componen. Además, aducen que no se cumple con el requisito de identidad entre las causas para que surta efectos la referida excepción, porque la demanda instada por los titulares incluye una reclamación adicional sobre daños y perjuicios.
En esencia, nos corresponde determinar si, por aplicar la doctrina de cosa juzgada, erró el foro apelativo al devol *353 ver el caso al Tribunal de Primera Instancia. Procedemos a resolver la controversia ante nuestra consideración.
II
La excepción de la cosa juzgada —exceptio rei judicatae— impide la litigación repetida e indefinida de una controversia adjudicada mediante una sentencia judicial, al evitar que entre las mismas partes se reproduzca un litigio posterior que verse sobre las mismas causas y cosas que el procedimiento precedente. Pagán Hernández v. U.P.R., 107 D.P.R. 720, 732-733 (1978); Mercado Riera v. Mercado Riera, 100 D.P.R. 940, 950 (1972); Méndez v. Fundación, 165 D.P.R. 253, 267 (2005). Esta excepción se fundamenta en el interés del Estado de evitar la incertidumbre jurídica, así como en el interés público de impedir que los ciudadanos sean sometidos a la litigación repetida de una misma controversia con las consecuencias perjudiciales que ello implicaría. Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212, 218-219 (1989). Véanse: Mun. de San Juan v. Bosque Real, S.E., 158 D.P.R. 743, 769 (2003); Pérez v. Bauzá, 83 D.P.R. 220, 225 (1961); Pagán Hernández v. U.P.R., supra, pág. 732; Méndez v. Fundación, supra, págs. 266-267. Así pues, la aplicación de la doctrina de cosa juzgada “protege intereses procesales importantes de nuestro sistema de administración de la justicia”. Méndez v. Fundación, supra, pág. 267.
Los requisitos objetivos y subjetivos para que surta efectos la referida excepción se establecen en el Artículo 1204 del Código civil, 31 L.P.R.A. sec. 3343. Bolker v. Tribunal Superior, 82 D.P.R. 816, 822-823 (1961). Véanse: Mercado Riera v. Mercado Riera, supra, págs. 947-948; A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. 753, 761-764 (1981). Específicamente, el citado artículo requiere que “entre el caso resuelto por la sentencia y aqu[e]l en que ésta sea *354 invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron”. Artículo 1204 del Código Civil, supra. Véanse: A & P Gen. Contractors v. Asoc. Caná, supra, págs. 761-762; Méndez v. Fundación, supra, pág. 267; Pagán Hernández v. U.P.R., supra, págs. 732—733; Fatach v. Triple S, Inc., 147 D.P.R. 882, 889 (1999).
Si concurren las identidades objetivas y subjetivas requeridas por el Artículo 1204 del Código Civil, supra, no procede la dilucidación en los méritos de la controversia que está ante la consideración del foro judicial. Bolker v. Tribunal Superior, supra, pág. 834. Véase Pagán Hernández v. U.P.R., supra, pág. 732. Esto en ausencia de circunstancias excepcionales que impliquen un asunto de interés público mayor. Méndez v. Fundación, supra, pág. 268; Pérez v. Bauzá, supra, págs. 226-227; Millán v. Caribe Motors Corp., 83 D.P.R. 494, 508-509 (1961). Consecuentemente, cuando se invoca la excepción de cosa juzgada, es preciso evaluar si en efecto concurren las identidades requeridas para que ésta surta efectos, a pesar de que exista una controversia justiciable entre las partes.
En primer lugar, para determinar si se satisface el requisito de identidad entre las cosas es necesario identificar cuál es “el bien jurídico cuya protección o concesión se solicita del juzgador”. M. Serra Domínguez, en M. Albaladejo, Comentarios al Código Civil y compilaciones forales, 2da ed., Madrid, Ed. Rev. Der. Privado, 1991, T. XVI, Vol. 2, pág. 735. Dicho análisis requiere considerar no sólo la cosa sobre la cual se suscita la controversia, sino que debe evaluarse cuál es el planteamiento jurídico que se genera en torno a ella en el procedimiento en concreto. Id., pág. 736. Lo esencial es, pues, determinar que ambos litigios se refieran a un mismo asunto. Rodríguez Rodríguez v. Colberg Comas, supra, pág. 220, citando a Q.M. Scaevola, Código Civil, Madrid, Ed. Reus, 1958, pág. 534.
En segundo lugar, la identidad entre las causas se logra establecer cuando se deduce que, tanto en el pleito anterior *355 como en el que se invoca la excepción de cosa juzgada, las acciones ejercitadas implican un mismo motivo o razón de pedir: “si los hechos y fundamentos de las peticiones son los mismos en lo que afecta la cuestión planteada. ”(5) A & P Gen. Contractors v. Asoc. Caná, supra, pág. 765, citando una Sentencia del Tribunal Supremo de España de 19 de febrero de 1962. Véase V. Prieto Cobos, Ejercicio de las Acciones Civiles, Pamplona, Ed. Aranzadi, 1983, T. I, Vol. 1, págs. 661-662. Así, la causa, para efectos de la cosa juzgada, se refiere “ ‘[a]l fundamento capital, el origen de las acciones o excepciones planteadas y resueltas, y no debe confundirse con los medios de prueba ni con los fundamentos legales de las pretensiones deducidas por las partes’ ”. (Enfasis suprimido.) Rodríguez Rodríguez v. Colberg Comas, supra, págs. 219-220, citando a J.M. Manresa, Comentarios al Código Civil Español, 5ta ed. rev., Madrid, Ed. Reus, 1950, T. VIII, Vol. 2, págs. 237-242. Véase Mercado Riera v. Mercado Riera, supra, págs. 951-952.
Cabe aclarar que no impide que se cumpla el requisito de identidad de causas el que la acción ejercitada sea distinta de la primera en su calificación jurídica o en términos nominales. A & P Gen. Contractors v. Asoc. Caná, supra, pág. 765; Prieto Cobos, op. cit., pág. 662. Véase Albaladejo, op. cit., págs. 745-746. Tampoco obsta la aplicación de la cosa juzgada el hecho de que en el segundo litigio se introduzcan nuevos argumentos y se reclamen remedios adicionales. Id. Sobre este último aspecto, en Mercado Riera v. Mercado Riera, supra, enfatizamos que la causa o el motivo de pedir no debe confundirse con el remedio solicitado. Expusimos que “[t]al enfoque permitiría a los litigantes escindir sus acciones en tantos pleitos como remedios a que tuviesen derecho”. Mercado Riera, pág. 952.
*356 Además de los dos requisitos antes enunciados, el Artículo 1204 del Código Civil, supra, requiere la perfecta identidad entre las partes litigantes, así como la calidad en que lo fueron. A & P Gen. Contractors v. Asoc. Caná, supra. Véanse: Camacho v. Iglesia Católica, 72 D.P.R. 353 (1951); Irizarry v. Díaz Ojea, 35 D.P.R. 144 (1926); Rodríguez Rodríguez v. Colberg Comas, supra. Al considerar el alcance de este tercer requisito, hemos señalado que, en principio, los efectos de la cosa juzgada se extienden a quienes intervienen en el proceso, a nombre y en interés propio. Id. En otras palabras, las personas jurídicas que son partes en ambos procedimientos, cumplidos los requisitos de identidad entre las causas y las cosas, resultarían directamente afectadas por la excepción de la cosa juzgada. Albaladejo, op. cit., págs. 755—756.
Por otra parte, en circunstancias excepcionales, los efectos de la cosa juzgada podrían extenderse a personas que no hayan sido partes procesales en el litigio que es utilizado como base para invocar dicha excepción.(6) El Artículo 1204 del Código civil, supra, reconoce instancias específicas en las cuales se cumple con el requisito de identidad de partes, para efectos de la cosa juzgada, aunque los litigantes del segundo pleito no fueran partes procesales en el primer procedimiento. El citado artículo establece que se cumple con el requisito de identidad de partes “siempre que los litigantes del segundo pleito sean causahabientes *357 de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones ...” Artículo 1204 del Código Civil, supra. Véanse: A & P Gen. Contractors v. Asoc. Caná, supra, pág. 766; Rodríguez Rodríguez v. Colberg Comas, supra, pág. 220. Así, el Artículo 1204 del Código Civil, supra, permite que, en consideración a determinadas relaciones jurídicas, pueda cumplirse con el requisito de identidad entre las partes aunque se trate de distintas personas jurídicas.
En atención a lo dispuesto en el Artículo 1204 del Código Civil, en Sucn. Zayas Berríos v. Berríos, 90 D.P.R. 551 (1964), determinamos que los efectos de la cosa juzgada se extendían a unos demandantes que, aunque no figuraron como parte formal en un primer procedimiento, podían considerarse como la parte realmente interesada en la causa de acción entonces ejercitada. Expusimos que los demandantes, en el pleito en el cual se invocó la excepción de cosa juzgada, en efecto se beneficiaban y controlaban la actuación del demandado nominal en un procedimiento precedente sobre las mismas causas y cosas. Concluimos que éstos tuvieron la oportunidad adecuada de defender sus derechos en el primer procedimiento, que existía la solidaridad requerida por el Artículo 1204 de Código Civil, supra, y que, consecuentemente, se cumplía con el requisito de identidad entre las partes para propósitos de la doctrina cosa juzgada.(7) Sucn. Zayas Berríos, pág. 565. Véase, además, Rodríguez Rodríguez v. Colberg Comas, supra, págs. 224-225.
La jurisprudencia ha reconocido otras circunstancias *358 excepcionales en las cuales los efectos de la cosa juzgada podrían extenderse a personas que no figuraron como parte en el procedimiento judicial que sirve de base a la cosa juzgada. En Danz v. Suau, 82 D.P.R. 609, 613 (1961), expusimos que, en el contexto de una comunidad de bienes, “cualquier resolución favorable en favor de uno o más partícipes beneficia a los otros partícipes en una propiedad poseída en común ...”. Indicamos, por el contrario, que las resoluciones adversas perjudicarían sólo al partícipe promovente, en ausencia de una acción afirmativa contraria de los demás comuneros. Id.
Posteriormente, en Pol Stella v. Lugo Christian, 107 D.P.R. 540 (1978), determinamos que se cumplía con el requisito de identidad de partes en una acción civil en la cual el padre impugnó la filiación previamente establecida por medio de una sentencia recaída en un procedimiento de naturaleza penal. Afirmamos que, en el primer procedimiento, el Estado actuaba en auxilio y beneficio del menor. Pol Stella v. Lugo Cristian, supra, pág. 549. Véase A & P Gen. Contractors v. Asoc. Caná, supra, pág. 762. Señalamos, entonces, que aunque el menor demandado en el segundo procedimiento no figuraba como parte en el procedimiento penal, era “la parte realmente interesada” en dicho procedimiento. Pol Stella, supra. Además, enfatizamos que el impartirle finalidad a la adjudicación de un litigio propende a que los procesos adjudicativos cumplan su función social de resolver disputas en un tiempo razonable. Id.
Cabe mencionar que la extensión de los efectos de la cosa juzgada a quienes no figuraron como partes procesales ni intervinieron directamente en un procedimiento anterior es objeto de discusión en la doctrina. Albaladejo, op. cit., pág. 763. Véase E. Ymaz, La esencia de la cosa juzgada y otros ensayos: límites subjetivos de la cosa juzgada, Argentina, Ed. La Ley, 1995, págs. 21-34. Al abordar este tema, Serra Domínguez expone que “[e]n principio, por tanto, la cosa juzgada se extiende a todas las personas par *359 tícipes en la relación jurídica discutida en el proceso Albaladejo, op. cit., pág. 765. Por el contrario, los efectos de la cosa juzgada no se extienden a las personas “titulares de una relación jurídica incompatible con el objeto del proceso, que son totalmente extrañas a la cosa juzgada y, por consiguiente, no deben sufrir perjuicio alguno derivado del proceso terminado ...”. Albaladejo, op. cit., pág. 756.
Sostiene Serra Domínguez que los efectos de la excepción de la cosa juzgada podrían extenderse a quienes no figuraron como parte en un procedimiento anterior por la naturaleza misma de una relación jurídica existente entre estos últimos y quienes hayan sido partes procesales en el pleito precedente. Albaladejo, op. cit., págs. 756 y 767-774. Expone que la participación en los efectos de la cosa juzgada, por la naturaleza de una relación jurídica existente, podría establecerse en casos sobre “obligaciones solidarias e indivisibles, comuneros, propiedad horizontal y socios en los procesos de sociedad”. íd., pág. 756.(8)
De lo anterior se infiere que tanto el Artículo 1204 de Código Civil, supra, como la jurisprudencia y la doctrina reconocen circunstancias excepcionales en las cuales se cumple con el requisito de identidad entre las partes para efectos de la cosa juzgada, aunque no coincidan estrictamente entre ambos procedimientos las mismas partes procesales. Ciertamente, la determinación de extender los efectos de la cosa juzgada a personas que no hayan intervenido como partes en el pleito precedente, merece parti *360 cular cautela y sólo procedería excepcionalmente. No obstante, no debemos soslayar que el análisis referente al cumplimiento del requisito de identidad entre las partes debe superar la mera verificación de si concurren, nominalmente, las mismas partes procesales en uno y otro procedimiento. Ello en vista que, aunque se trate de distintas personas jurídicas, puede existir entre ellas una relación jurídica tal que justifique la extensión de los efectos de la cosa juzgada.
En el recurso que está ante nuestra consideración, la parte recurrente aduce que erró el foro apelativo intermedio al devolver el caso al Tribunal de Primera Instancia, a pesar de estar presentes los requisitos establecidos en el Artículo 1204 del Código Civil, supra. Expone que entre el procedimiento sobre sentencia declaratoria, instado por el Consejo de Titulares, y el segundo pleito sobre sentencia declaratoria, instado por los titulares, concurren las identidades requeridas entre las causas, las cosas y las personas de los litigantes. Para determinar si en efecto concurren dichos elementos, en particular el requisito de identidad entre las partes litigantes, es preciso que consideremos la relación que existe entre el Consejo de Titulares y los titulares en su carácter individual, a la luz de la Ley de Propiedad Horizontal y la jurisprudencia aplicable.
III
A. El Régimen de Propiedad Horizontal tiene como propósito primordial permitir la existencia del apartamento como propiedad individual y el pleno ejercicio de su titular de las prerrogativas propietarias. Artículo 1-A de la Ley Núm. 104 de 25 de junio de 1958, según enmendada por la Ley Núm. 103 de 5 de abril de 2003 (Ley de la Propiedad Horizontal), 31 L.P.R.A. see. 1291 n. La consecución de dicho fin requiere una administración adecuada de las *361 áreas y los haberes comunes que forman parte del régimen cuya existencia es necesaria para el disfrute del apartamento como unidad básica. íd. Conscientes de ello, hemos señalado la relevancia de “crear instituciones o mecanismos para proteger los intereses comunes de los propietarios de las unidades individuales que conforman el régimen”. Residentes Pórticos v. Compad, 163 D.P.R. 510, 518 (2004).
La Ley de Propiedad Horizontal dispone una serie de normas que rigen la administración del régimen y proveen una distribución de las facultades decisorias que inciden sobre los intereses comunes de los titulares. El esquema adoptado por la referida ley creó al Consejo de Titulares como un órgano directivo de todo el condominio y le invistió de “la prerrogativa de tomar decisiones sobre todos los asuntos de interés para la comunidad y adoptar aquellas medidas necesarias para la mejor consecución de los objetivos comunes de los condominos”. (Enfasis nuestro.) Residentes Pórticos v. Compad, supra, pág. 518. Específicamente, la Ley de Propiedad Horizontal establece que “ [e] 1 Consejo de Titulares constituye la autoridad suprema sobre la administración del inmueble sometido al régimen de propiedad horizontal”. Artículo 38 de la Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 1293b.
Sobre la composición del Consejo de Titulares, hemos indicado que está integrado por “la totalidad de los dueños de apartamientos y locales que componen un inmueble sometido al Régimen de Propiedad Horizontal”. Cond. Prof. S.J. H. Centre v. P.R.F., Inc., 133 D.P.R. 488, 497 (1993). Así lo establece el Artículo 38 de la Ley de la Propiedad Horizontal, supra, el cual dispone que el Consejo de Titulares “[e]stará integrado por todos los titulares”. Al ser el Consejo de Titulares el organismo rector del régimen, los acuerdos y las resoluciones que adopten los titulares, siguiendo los procedimientos que establece la Ley de la Propiedad Horizontal, son vinculantes para ellos, los ocupan *362 tes, residentes y demás personas relacionadas con el condominio. Id. Véanse: D.A.Co. v. Junta Cond. Sandy Hills, 169 D.P.R. 586 (2006); Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225, 252 (1978).
Aunque el Consejo de Titulares está compuesto por la totalidad de los dueños de apartamientos que conforman el inmueble sometido al régimen de propiedad horizontal, a este cuerpo se le ha conferido una personalidad jurídica independiente de la de los miembros que lo integran. Artículo 38 de la Ley de Propiedad Horizontal, supra. Véanse: Arce v. Caribbean Home Const. Corp., supra, pág. 252; Cond. Prof. S.J. H. Centre v. P.R.F., Inc., supra, pág. 497; D.A.Co. v. Junta Cond. Sandy Hills, supra, pág. 9. En Arce v. Caribbean Home Const. Corp., supra, pág. 253, al reconocerle al Consejo de Titulares una personalidad jurídica, sostuvimos que ello convierte al referido cuerpo en “ ‘un auténtico sujeto de derecho con personalidad plena en el ámbito de sus finalidades’ ”. Reconocimos así que el Consejo de Titulares existe como persona jurídica independiente cuando “ ‘actúa en función del fin común perseguido’ ”. Id.(9) Véase, también, Cond. Prof. S.J. H. Centre v. P.R.F., Inc., supra, pág. 497.
B. Como consecuencia de su personalidad jurídica, el Consejo de Titulares ostenta la capacidad requerida para figurar como parte en un procedimiento judicial. M.J. Godreau, Personalidad jurídica, legitimación activa y propiedad horizontal: capacidad legal de la junta de directores y del Presidente para llevar acciones a nombre del condominio, 64 (Núm. 3) Rev. Jur. U.P.R. 481, 484-485 (1995). Ahora bien, el hecho de que el Consejo de Titulares posea capacidad jurídica no le faculta para comparecer como de *363 mandante o demandado en cualquier procedimiento judicial que involucre a algún titular del condominio o que se relacione de alguna forma con éste. Consejo Tit. v. Galerías Ponceñas, Inc., 145 D.P.R. 315, 328 (1998). Para determinar si el Consejo de Titulares ostenta legitimación para comparecer en un procedimiento judicial, bien como demandante o demandado, debemos acudir a la Ley de Propiedad Horizontal, como fuente primaria de legitimación, o evaluar si se satisfacen los criterios establecidos por la jurisprudencia. Id.; M. Godreau, op. cit, págs. 485-491.
En términos generales, y entre otros aspectos, la Ley de Propiedad Horizontal faculta al Consejo de Titulares para “[intervenir y tomar decisiones sobre aquellos asuntos de interés general para la comunidad así, como tomar aquellas medidas necesarias y convenientes para el mejor servicio común”. Artículo 38 de la Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 1293b(k). Según expone Godreau, en virtud de las prerrogativas y los derechos que la ley confiere al Consejo de Titulares, las causas de acción que éste ejercite tienen que girar en torno a: el mejor servicio común, los problemas comunales, el menoscabo a las áreas comunes, las medidas adoptadas para el mejor funcionamiento del condominio o los daños al patrimonio del Consejo de Titulares. Godreau, op. cit, pág. 486.
De otra parte, en casos en que no se afecten directamente los elementos comunales o el patrimonio del Consejo de Titulares, este cuerpo podría tener legitimación activa para instar una acción en representación de los intereses de titulares si se cumplen los requisitos adoptados en Col. Ópticos de P.R. v. Vani Visual Center, 124 D.P.R. 559 (1989). Véanse: Consejo Tit. v. Galerías Ponceñas, Inc., supra, pág. 328; Godreau, op. cit., págs. 486-491. Así pues, el Consejo de Titulares podría estar legitimado para instar reclamaciones en representación de los titulares, en su carácter individual, si: (1) los titulares tienen legitimación activa para demandar a nombre propio; (2) los intereses *364 que se pretenden proteger están relacionados con los objetivos de la entidad, y (3) la reclamación y el remedio solicitados no requieren la participación individual de los titulares en el pleito. Col. Ópticos de P.R. v. Vani Visual Center, supra, pág. 566.
En las instancias en que el Consejo de Titulares ostente legitimación activa, puede acudir ante el foro judicial “representado por quien la Ley faculte para hacerlo”. Godreau, op. cit., pág. 485, citado en Consejo Tit. v. Galerías Ponceñas, Inc., supra, págs. 327-328. Sobre este particular, la Ley de la Propiedad Horizontal dispone que el Presidente de la Junta de Directores, como parte de los poderes y deberes que le incumben, representará a la comunidad de titulares en los procedimientos judiciales. Artículo 38-E de la Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 1293b4A; Consejo Tit. v. Galerías Ponceñas, Inc., supra, págs. 328-329. La referida facultad constituye un mecanismo para facilitar las actuaciones de la comunidad con respecto a terceros. Godreau, op. cit., pág. 493.
En vías de que la facultad representativa del Presidente de la Junta de Directores se ejerza en concordancia con los intereses comunales, en Consejo Tit. v. Galerías Ponceñas, Inc., supra, adoptamos la propuesta de Godreau, al efecto de que debe considerarse la acción judicial en cuestión para determinar si el Presidente debe contar con el consentimiento del Consejo de Titulares para instarla. Id., citando a Godreau, op. cit., pág. 495. Véase, además, D.A.Co. v. Junta Cond. Sandy Hills, supra, pág. 11. Resolvimos que el Presidente no requiere el consentimiento previo, siempre que la acción esté relacionada con las facultades que le fueron expresamente delegadas por la Ley de Propiedad Horizontal. Consejo Tit. v. Galerías Ponceñas, Inc., supra. Véase D.A. Co. v. Junta Cond. Sandy Hills, supra.
Por otra parte, afirmamos que si la gestión judicial no se realiza como consecuencia del ejercicio de facultades o deberes que expresamente la ley confiere al Presidente o a la *365 Junta de Directores, se requiere el consentimiento previo del Consejo de Titulares o su posterior ratificación.(10) Consejo Tit. v. Galerías Ponceñas, Inc., supra. En Consejo Tit. v. Galerías Ponceñas, Inc. el Presidente de la Junta de Directores, en representación del Consejo de Titulares, instó una acción confesoria de servidumbre de paso sobre un predio de terreno que no formaba parte del Condominio. Estimamos, en dicha ocasión, que la presentación de la referida acción no podía considerarse parte de las facultades que expresamente le confería la ley. Consecuentemente, determinamos que la actuación del Presidente requería la intervención oportuna del Consejo de Titulares.
Es preciso recalcar que, en todo caso, el Presidente tiene la obligación de mantener informado al Consejo de Titulares sobre las acciones instadas en su representación. Consejo Tit. v. Galerías Ponceñas, Inc., supra, pág. 333; D.A.Co. v. Junta Cond. Sandy Hills, supra, pág. 11. Dicha entidad, como cuerpo deliberativo y normativo del régimen, retiene la facultad de evaluar la determinación del Presidente de acudir al foro judicial. Consejo Tit. v. Galerías Ponceñas, Inc., supra, págs. 333-334. Véase Godreau, op. cit., pág. 492; D.A.Co. v. Junta Cond. Sandy Hills, supra, pág. 12. Este organismo, a su vez, “conserva el poder de utilizar aquellos mecanismos que la propia Ley de Propiedad Horizontal y nuestro ordenamiento jurídico les confiere para alterar el curso de acción seguido por el cuerpo directivo”. Consejo Tit. v. Galerías Ponceñas, Inc., supra, pág. 334. Sobre este particular, Godreau expone lo siguiente:
Bajo ningún concepto debe mantenerse ajeno al Consejo de Titulares de las acciones incoadas a su nombre, ya que este cuerpo muy bien podría decidir que el asunto no amerita in *366 currir en los gastos legales que conllevan las acciones propuestas o iniciadas por el Presidente o la Junta. (Énfasis nuestro.) Godreau, op. cit., págs. 495-496.
Surge de la discusión que antecede que en los procedimientos judiciales instados por el Presidente, en representación del Consejo de Titulares, éste tiene la obligación de mantener informados a los titulares del curso de acción seguido. El Consejo de Titulares conserva la potestad de aprobar o rechazar la presentación de determinada acción judicial, así como la facultad de variar el curso de una acción ya instada.
Ahora bien, el Consejo de Titulares está compuesto por todos los titulares de los apartamentos que conforman el inmueble sometido al régimen de propiedad horizontal. Consecuentemente, son los titulares —como colectivo— quienes, siguiendo los procedimientos deliberativos que dispone la Ley de Propiedad Horizontal, mantienen injerencia sobre los procedimientos judiciales instados por el Presidente de la Junta de Directores. Así, aunque el Consejo de Titulares ostenta una personalidad jurídica independiente a la de los miembros que lo integran, los procedimientos judiciales que inste el Presidente, en representación de dicho cuerpo, no pueden sostenerse de forma ajena ni contraria a la voluntad colectiva de los titulares que lo integran.
A la luz de la normativa antes expuesta, procederemos a considerar la corrección de la sentencia del Tribunal de Apelaciones, aquí recurrida.
IV
A. El Tribunal de Apelaciones expuso en la sentencia recurrida que el mecanismo de sentencia declaratoria tiene el propósito de dilucidar una controversia sustancial entre las partes y disipar la incertidumbre jurídica. Determinó que, de prevalecer una controversia entre las partes, la *367 cosa juzgada no puede ser impedimento para que los tribunales ejerzan su jurisdicción y diluciden una petición de sentencia declaratoria ante su consideración. Como consecuencia de dicho razonamiento, devolvió el caso al Tribunal de Primera Instancia para que, de prevalecer una controversia real entre las partes, procediera a resolverla. Entendemos que erró el foro apelativo en esta determinación. Veamos.
La Regla 59 de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece el mecanismo de sentencia declaratoria al disponer que el Tribunal de Primera Instancia está facultado “para declarar derechos, estados y otras relaciones jurídicas aunque se inste o pueda instarse otro remedio”. La citada regla añade que la sentencia declaratoria “podrá ser en su forma y efectos, afirmativa o negativa, y tendrá la eficacia y vigor de las sentencias o resoluciones definitivas”. Id. Una sentencia declaratoria goza de idéntica trascendencia que las demás sentencias emitidas por los tribunales.
Hemos indicado que el mecanismo establecido por la Regla 59 de Procedimiento Civil, supra, permite la dilucidación de los méritos de una controversia, sin lesión previa de los intereses legales implicados, siempre y cuando la parte promovente esté expuesta a un peligro potencial. Charana v. Pueblo, 109 D.P.R. 641, 653 (1980); Sánchez et al. v. Srio. de Justicia et al., 157 D.P.R. 360 (2002). Véase, además, R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, 4ta ed., San Juan, Ed. Lexisnexis de Puerto Rico, 2007, See. 6001, pág. 492. Se requiere, pues, que entre las partes exista una controversia real, no abstracta ni hipotética. Asoc. V. Villa Caparra v. Iglesia Católica, 117 D.P.R. 346 (1986); Moscoso v. Rivera, 76 D.P.R. 481, 492—493 (1954); Sánchez et al. v. Srio. de Justicia et al., supra.
Según expusimos previamente, si concurren los requisitos para que aplique la excepción de la cosa juzgada, no *368 procede la dilucidación en los méritos de una controversia ante la consideración del tribunal. De forma contraria a dicha norma, el foro apelativo determinó que si prevalece una controversia entre las partes, la cosa juzgada no es impedimento para que los tribunales ejerzan su jurisdicción y resuelvan una controversia mediante una sentencia declaratoria. Independientemente de que el mecanismo utilizado por la parte promovente sea una petición de sentencia declaratoria, si están presentes las identidades requeridas para aplicar la excepción de la cosa juzgada, no procede que el tribunal dilucide los méritos de la controversia ante sí. Concluimos que erró el Tribunal de Apelaciones al devolver el caso al Tribunal de Primera Instancia sin considerar si concurrían los elementos objetivos y subjetivos requeridos para la aplicación de la cosa juzgada.
Resuelto este aspecto, procedemos a evaluar si, en efecto, están presentes las identidades requeridas por el Artículo 1204 del Código Civil, supra.
B. La extensa trayectoria procesal que ha dado paso a la controversia ante nuestra consideración incluye múltiples pronunciamientos judiciales, tanto del Tribunal de Primera Instancia como del foro apelativo intermedio. Nuestra función revisora se limita, en este caso, a determinar si entre el proceso que culminó con la sentencia del Tribunal de Apelaciones en el caso KLAN200501584 y el procedimiento que dio paso a la sentencia aquí recurrida (KLAN200601594) concurren las identidades requeridas para la aplicación de la doctrina de cosa juzgada. No está, pues, ante nuestra consideración la corrección de la sentencia emitida por el Tribunal de Apelaciones en el pleito precedente, la cual advino final y firme.
Reiteramos que en el primer procedimiento sobre sentencia declaratoria, el Consejo de Titulares solicitó que se declararan sus derechos propietarios sobre las instalaciones que proveen los servicios generales de agua y electricidad al Condominio Beacon Hill. Además, dicho organismo *369 reclamó que se decretara el derecho de los titulares que lo integran al uso y disfrute de las dos piscinas que enclavan en la finca 2585. Por último, solicitaron que se emitiera urna orden al Registrador de la Propiedad para que inscribiera los derechos reclamados sobre la finca 2585.
En el segundo de los pleitos, comparecieron los titulares en su carácter individual y reclamaron que se reconociera mediante una sentencia la titularidad del Consejo de Titulares de los elementos comunes ubicados en la finca 2585, así como el derecho de uso y disfrute de los titulares sobre éstos. Alegaron que ostentaban los derechos reclamados en virtud de la escritura constitutiva del régimen de propiedad horizontal y, nuevamente, solicitaron al Tribunal de Primera Instancia que emitiera una orden de inscripción de dichos derechos al Registrador de la Propiedad. Además, incluyeron una reclamación por daños y perjuicios.
Tras revisar la demanda instada por el Consejo de Titulares y la posterior reclamación presentada por los titulares, es ineludible la conclusión de que ambas reclamaciones se refieren al mismo objeto: las instalaciones de servicios generales y facilidades recreativas localizadas en la finca 2585. Sobre dichas instalaciones, a su vez, en ambos pleitos se reclaman idénticos derechos. Se cumple así el requisito de identidad entre las cosas para que surta efectos la excepción de la cosa juzgada.
Asimismo, concluimos que los dos procedimientos en cuestión implican un mismo fundamento o razón de pedir. En ambos se sostiene que, en virtud de la escritura de constitución del régimen de propiedad horizontal, el Consejo de Titulares o los titulares ostentan ciertos derechos reales sobre la finca 2585. El hecho de que en el segundo procedimiento los titulares soliciten como remedio, además de la declaración e inscripción de los derechos reclamados, el resarcimiento por los daños que alegadamente han sufrido por la ausencia de su publicidad registral, no obsta la aplicación de la cosa juzgada. Reiteramos que la identidad *370 entre las causas, para efectos de la cosa juzgada, no depende de que en uno y otro procedimiento se reclamen remedios adicionales.
Nos resta considerar si, entre ambos procedimientos, se cumple con el requisito de identidad entre las partes litigantes, a pesar de que en el primer pleito compareció como demandante el Consejo de Titulares, mientras que en el segundo demandaron los titulares en su carácter individual. Puntualizamos que durante el pleito instado por el Consejo de Titulares se reclamaron tanto derechos de dicha entidad sobre los elementos comunales ubicados en la finca 2585, como los derechos de uso y disfrute de los titulares en su carácter individual sobre las instalaciones ubicadas en la misma finca. La legitimación del Consejo de Titulares para reclamar judicialmente los derechos correspondientes a los titulares no se cuestionó en ninguna etapa de los procedimientos. Tampoco se cuestionó que el Presidente de la Junta de Directores instara dicho procedimiento en representación del Consejo de Titulares, sin informar u obtener el consentimiento colectivo de los titulares que integran dicha entidad.
Al instar la segunda demanda sobre sentencia declaratoria, los titulares conocían el procedimiento judicial iniciado por el Consejo de Titulares en su representación. Más aun, los titulares hicieron formar parte integral de su reclamación las alegaciones presentadas por el Consejo de Titulares en la demanda sobre sentencia declaratoria previamente instada. Luego, solicitaron al Tribunal de Primera Instancia la consolidación de ambos procedimientos, afirmando que versaban sobre iguales controversias de hecho y de derecho. Los titulares no utilizaron los mecanismos deliberativos que provee la Ley de Propiedad Horizontal ni los mecanismos que provee nuestro ordenamiento jurídico para variar o cuestionar la acción judicial instada por el Presidente en representación del Consejo de Titulares.
*371 No puede soslayarse el hecho de que el Consejo de Titulares está integrado por los titulares que comparecieron como demandantes en el segundo procedimiento. Según ex-pusimos, los procedimientos instados por el Consejo de Titulares no pueden sostenerse de forma ajena a la voluntad colectiva de los titulares que lo integran. En el presente caso, los titulares conocían de la acción instada por el Consejo de Titulares, dirigida a reclamar tanto derechos relativos a elementos comunales como derechos de los titulares en su carácter individual. No obstante, los titulares no cuestionaron ni la legitimación ni la facultad del Consejo de Titulares para representar sus intereses. No podemos avalar que, en esta etapa, los titulares intenten desligarse de las consecuencias del procedimiento judicial que, en representación de sus intereses, inició el Consejo de Titulares.
Considerando los hechos particulares que suscitaron la controversia ante nuestra consideración, así como la relación existente entre el Consejo de Titulares y los titulares que lo integran, concluimos que se cumple el requisito de identidad entre las partes establecido por el Artículo 1204 del Código Civil, supra.
Considero que concurren las identidades entre las causas, las cosas y las personas de los litigantes entre el pleito sobre sentencia declaratoria instado por el Consejo de Titulares y el procedimiento posterior iniciado por los titulares en su carácter individual. Consecuentemente, concluimos que erró el Tribunal de Apelaciones al no confirmar el dictamen del foro primario, el cual desestimó la segunda demanda sobre sentencia declaratoria bajo el fundamento de cosa juzgada, por lo que procede su revocación.
Este resultado fortalece los intereses públicos y de administración de la justicia que subyacen la aplicación de la excepción de la cosa juzgada. Afirmamos que la personalidad jurídica que ostenta el Consejo de Titulares es un instrumento para servir a los intereses comunes de los titula *372 res que lo integran. No debe utilizarse, pues, como pretexto para reproducir ante los foros judiciales las controversias ya adjudicadas cuyos resultados no resulten acordes con los intereses de los titulares representados.
V
Por entender que actuó correctamente el foro primario al determinar que concurren las identidades requeridas para la aplicación de la excepción de la cosa juzgada, pro-cede la desestimación de la demanda sobre sentencia declaratoria instada por los recurridos en el caso de epígrafe.

 Halvorsen ostentaba junto a Anne Snell la propiedad en común pro indiviso de la finca 2585 desde 1972, cuando se decretó la disolución del vínculo matrimonial existente entre ambos.

 Tras considerar la Escritura Matriz del Régimen de Propiedad Horizontal del Condominio Beacon Hill Terrace (Condominio Beacon Hill), la resolución del Departamento de Asuntos del Consumidor (D.A.Co.) de 15 de mayo de 1992 y la sentencia del Tribunal de Primera Instancia en el caso FAC 2005-0177, el Registrador de la Propiedad inscribió a favor del Consejo de Titulares un derecho de usufructo sobre las facilidades localizadas en la finca 2585.

 Robert Halvorsen fue incluido como parte en el proceso en sustitución de su fenecido padre Norman Halvorsen, quien figuraba originalmente como demandante.

 Los peticionarios, en síntesis, señalaron que erró el Tribunal de Apelaciones al: (l)resolver que la doctrina de cosa juzgada no impide que los tribunales reiteren o declaren el ámbito de los derechos reclamados; (2) concluir que prevalece una controversia entre las partes sobre si los titulares del Condominio Beacon Hill tienen derecho a utilizar las instalaciones de la finca 2585; (3) hacer caso omiso a la aplicabilidad de la doctrina de cosa juzgada y reiterar unas opiniones que constituyen una opinión consultiva, y (4) devolver el caso al Tribunal de Primera Instancia a pesar de que la solicitud de los demandantes es contraria a la Ley Hipotecaria y del Registro de la Propiedad.

 Además, hemos afirmado que se cumple con el elemento identidad entre las causas “cuando la nueva acción estuviera como embebida en la primera, o fuese consecuencia inseparable de la misma Mercado Riera v. Mercado Riera, 100 D.P.R. 940, 951-952 (1972).

 Sobre este particular, señala Oliva Santos: “Es frecuente que el Derecho positivo contemple casos excepcionales en que la cosa juzgada alcanza a sujetos jurídicos diferentes de quienes litigaron en el proceso en que se produjo la resolución con aquella fuerza. La excepcionalidad viene dada por la naturaleza especial de lo que fue objeto del proceso o/y por las especiales relaciones entre ciertos sujetos. En algunos países, la jurisprudencia se ocupa también de los límites subjetivos de la cosa juzgada, ya ampliando los límites en que ésta se ha de proyectar sobre sujetos no litigantes, ya rectificando lo que, en principio, se diría consecuencia obligada de esa especial naturaleza del objeto procesal o de singulares vínculos intersubjetivos.” O. Santos, Sobre la Cosa Juzgada, Madrid, Ed. Centro de Estudios Ramón Areces, 1991, pág. 45. Véase, además, E. Ymas, La esencia de la cosa juzgada y otros ensayos: límites subjetivos de la cosa juzgada, Argentina, Ed. La Ley, 1995, pág. 21.

 Expusimos en aquella ocasión que: “ ‘existe jurídicamente identidad de personas, aunque no sean físicamente las mismas las que litiguen en los dos pleitos, cuando la que litiga en el segundo pleito ejercita la misma acción e invoca iguales fundamentos y se apoya en los mismos títulos que en el primero, pues ello implica la solidaridad jurídica entre los demandantes a que se refiere el Art. 1252 ...’ (Art. 1204 del Código Civil de Puerto Rico).” Sucn. Zayas Berríos v. Beríos, 90 D.P.R. 551, 565 (1964).

 En particular, discute que el régimen de propiedad horizontal presenta una situación peculiar para efectos de la aplicación de la cosa juzgada, y señala lo siguiente: “Careciendo la comunidad de personalidad jurídica independiente, la representación conferida al presidente debe considerarse como una representación legal de todos y cada uno de los comuneros .... Desde el punto de vista de la cosa juzgada la sentencia dictada frente a la comunidad, sea favorable o desfavorable, afecta a todos los comuneros, por existir identidad jurídica entre los comuneros y la comunidad (artículo 1.252, l.°, del C.c.). No obstante, cada comunero podrá intervenir litisconsorcialmente en los procesos seguidos por la comunidad, a los efectos de evitar los efectos desfavorables de la cosa juzgada.” M. Serra Domínguez, en Albaladejo, Comentarios al Código Civil y compilaciones forales, 2da ed., Ed. Edersa, 1991, T. XVI, Vol. 2, págs. 773-774.

 El Consejo de Titulares, como entidad, podría diferir del criterio minoritario de sus miembros siempre que actúe conforme a las disposiciones de la Ley de Propiedad Horizontal y, recalcamos, dentro del ámbito de sus finalidades. Cond. Prof. S.J. H. Centre v. P.R.F., Trac., 133 D.P.R. 488, 499 (1993). Véase Consejo Tit. v. Galerías Ponceñas, Inc., 145 D.P.R. 315, 329 (1998).

 Opera una presunción rebatible de que el presidente está autorizado para acudir a los tribunales en representación del Consejo de Titulares. Consejo Tit. v. Galerías Ponceñas, Inc., supra, pág. 334. Si se rebate tal presunción, corresponde al Presidente demostrar que el Consejo de Titulares consintió al litigio, previo a su presentación, o ratificó su gestión en un tiempo razonable. Id.